Hawkins *v.* Justices of Trousdale County.

12L 351
14L  74

W. G. HAWKINS *v.* JUSTICES OF TROUSDALE COUNTY

1. ROADS. *Jury of view.* Under the existing statutes in relation to roads, it is not the report of the jury of view which determines the rights of the applicant in a case of contest, but the judgment of the court upon the evidence introduced, and, therefore, it was error in the circuit court, upon appeal, to dismiss an application because the report of the jury of view in the county court was conditional, and the report of the jury of view appointed by the circuit court was only signed by four out of the five jurors designated.

2. SAME. *Application to change road.* The proper mode of making an application to lay off or change a road is by petition, and such a petition may be required by the county court, or by the circuit court upon appeal, but a less formal application will be good if entertained without objection.

3. SAME. *Pleadings and practice.* An appeal in a road case from the county to the circuit court operates as a broad appeal, or an appeal in error, according to circumstances; but the circuit court may properly refuse to confirm the report of a jury of view appointed by the county court, which, while locating the road, contains conditions for the benefit of the applicant, not the public. The circuit court should, however, hear the proof offered, and determine the case.

---

FROM TROUSDALE.

---

Appeal in error from the Circuit Court of Trousdale county.    N. W. McCONNELL, J.

J. S. McMURRAY and SMITH & BUNLEY for Hawkins.

HAMMOCK & CARUTHERS for Justices.

COOPER, J., delivered the opinion of the court.

On March 2, 1880, W. G. Hawkins applied to the county court of Trousdale county to change a public

road. The minutes of the court show that on his motion five persons named were appointed a jury of view "to examine and change the road running from Cedar Bluff to the Hartsville and Carthage turnpike, change to be from the branch at Corley's school house, passing north of the lane, thence through W. G. Hawkins' farm, intersecting the turnpike west of G. W. Rosser." The jury of view made their report, signed by all of them, that they had examined, marked and located the road. They specify the line of the road as changed, and report in favor of the change "upon the following conditions: That the said Hawkins shall open and construct a good road at his own expense, and erect good gates that will open and shut easily, provided also that the old road shall be kept open to the public until the new road shall have been completed." Hawkins presented the report of the jury to the county court, and moved its confirmation. The court refused to confirm the report, and Hawkins appealed to the circuit court.

In the circuit court the justices of the county court filed exceptions to the report of the jury of view, some of which exceptions were directed to supposed defects on the face of the report, and others to extraneous matter, such as that the route reported was impracticable, and that notice was not given to the Corleys, over a part of whose land the road is asked to run. The circuit judge was of opinion that one of these exceptions, "that the report located the road on conditions," was well taken, and rendered the report void. He, therefore, "suppressed it," and appointed

five other persons as a jury of view "to examine and change the road," giving them the same directions as those in the order of the county court, with the addition that they report whether the change is for the public benefit or the individual benefit of W. G. Hawkins. The jury made a report, signed by four of them, that they had examined and located the road, giving the location as in the report of the first jury. They added that they believed "the route to be practicable and for the interest of the traveling public." One of the jury dissented in writing, believing, he says, "that if the same amount of work was done on the old road as the new that it would be as easily kept in repair, and would be the best for the public, as it is more level and nearer." Hawkins filed an exception to the report "that he was entitled to the change as it was asked for on his own land." And he moved the court, upon the report of the first jury of view, to hear proof whether the road as prayed for should be opened. The court refused the motion upon the ground that the first report had been set aside. He then moved the court to hear proof and determine the question, notwithstanding the report of the jury, which was refused. The court also overruled motions by him to recommit the report to the same jury, or to appoint a new jury of view, and dismissed the proceedings at the cost of the applicant, the court "being of opinion that the statute required a road to be laid off by a jury of five." Hawkins appealed in error. The Referees have reported in favor of reversing the judgment of the circuit court,

23—VOL. 12.

and remanding the cause to that court "to be proceeded in upon the report of the first jury of view, and upon any competent and relevant proof." The exceptions open the case.

By the Code, which embodies the pre-existing law, the duty of laying off and changing public roads is entrusted to the county court: Code, sec. 1183. "All roads shall be laid out by a jury of not less than five nor more than twelve householders, appointed by the county court, at any term, by an order on its minutes, specifying the names of the jurors, and the points where the road is to begin and end, its general direction, and directing the report to be made at a quarterly session of the court": Code, sec. 1185. The mode of executing the order and the form of making the report are prescribed by sections 1186 and 1188. "Every owner or possessor of lands which may be affected by altering, changing or laying out of a road, shall be notified of the proposed change or location by the party applying, or by the officer in charge of the order": Code, sec. 1187. This is a comparatively recent requirement, for it is taken from the act of 1856, ch. 155. "Any person conceiving himself aggrieved by the location or alteration of a road may, on motion within nine months after the location, have a jury summoned to review the road; which jury may turn it to the most convenient place, taking into view the public good as well as the injury sustained by the complainant, or assess damages to be paid by the county": Code, sec. 1189. The old law seemed to treat the preliminary proceedings and the appointment

of the jury of view as summary and *ex parte*, the right to contest being reserved for the jury of review This is plain when we look to the old acts of 1796, ch. 22, and 1804, ch. 1, from which the sections of the Code are principally taken. The act of 1856 provided for notice to the land owners affected, and by necessary implication gave them the right to come forward and resist the location of the jury of view. By the act of 1860, ch. 23, passed after the adoption of the Code, and brought into T. & S. Rev. Code, sec. 1187, *a*, *b*, *c* and *d*, it was made unlawful for any person to apply for an order of a jury of view to lay off any public road or change any old road, unless he shall have first given five days notice in writing at the time of the application to the owners of the land over which he proposes to run the new road. The court may then hear testimony for and against said application, and grant or refuse the same as may in their judgment best conduce to the public good. When the petition is filed for the benefit of the petitioner, the cost shall be paid by the person asking the change, and it shall be the duty of the jury of view to report whether the change so made is for the benefit of the petitioner or for the public good.

This last act fairly implies that the application should be by petition, and it would have been in accord with the analogies of our practice that the application under the old law might be made in the same way. This course seems to have been pursued, and the contest made thereon in *McWhirter* v. *Cockrill*, 2 Head, 9, one of our leading cases. And, obviously,

even upon an informal application, especially after no-tice was required, it might be resisted at once.

The power to open roads is a prerogative of sov-ereignty, for its exercise is an appropriation of private property for public use. The power has been dele-gated by the Legislature to the county courts, and is exercised by them as a municipal function: *Turnpike Co.* v. *Maury County*, 8 Hum., 342. But in all cases which involve the rights of individuals, on which the county courts are authorized to adjudicate, they exercise judicial powers: *Grant* v. *Lindsay*, 11 Heis., 651, 666. The statute gives the right of appeal from the judg-ment of the court to the parties interested or ag-grieved. ' The appeal is to the circuit court, and from that court to this court: Code, sec. 1191. The jus-tices of the county court, as representatives of the public interest, are necessary parties to the appeal: *Evans* v. *Shields*, 3 Head, 70; *Cannon* v. *McAdams*, 7 Heis., 376. The appeal, by special provision of law, does not entirely vacate a judgment establishing a road, for the statute reserves to the county court the right to open the road notwithstanding the appeal: Code, sec. 1192. It has therefore been held that the appeal may operate as a broad appeal or an appeal in error according to the necessity of the case. And if the proceedings of the county court be regular, and the appellant offer no proof, the action of the court may be affirmed: *Beard* v. *Justices*, 3 Head, 78. And the county may be required in a proper case to pay costs: *Senaker* v. *Justices*, 4 Sneed, 116. Ordinarily, a broad appeal brings up to the circuit court the whole

case for trial *de novo*. And, therefore, if the proceedings of the jury of view in the county court have not been in strict accordance with the law, and the report irregular, it is of no consequence on appeal. For the report was only intended to inform the county court of the facts by which they might be enabled to act. on the subject, and would have no weight with the circuit court where the facts are fully investigated in that court by the introduction of witnesses: *Patton* v. *Clark*, 9 Yer. 268. Under the present law, says Nicholson, C. J., the appointing of a jury is only an initiatory proceeding to bring before the county court the facts upon which the proper number of justices is to determine whether the application shall be granted or not. Upon the return of the jury the case is open for proof. The petition, order for a jury and report make up the issue to be tried by the county court, and by the judge upon appeal. The circuit court has the discretion to allow such amendments of the proceedings as the contesting parties may deem necessary, and either upon the application of the parties, *or mero motu*, may appoint another jury of view to report facts which may aid him in coming to a satisfactory conclusion. But he may proceed to try the case upon the examination of witnesses without the report of a jury of view: *Justices* v. *Graham*, 6 Baxt., 97.

The circuit judge in this case acted under the belief that the road must be laid out by the jury of view, and that without a report from such a jury, signed by the lowest number of jurors prescribed by the statute,

actually laying off the particular road the court could not proceed. But this is a misapprehension of the functions of a jury. By the old law the jury of view and their report were merely for the information of the court and *ex parte*. The report might be contested, as well as any order of court thereon, within nine months from the laying out of the road by any person aggrieved. No doubt the application for the jury might have been contested at once under the old statutes, as it clearly may be now under the new law. It is not the report which determines the rights of the parties, for the county court might try the contest without a report, and, as we have seen, the report becomes immaterial upon a trial of the merits in the circuit court. The contest must be determined by the court upon the evidence, not the report. And it is, therefore, a matter of no consequence, upon an actual contest, whether the jury agree or disagree, or whether there is no jury at all. The applicant has a right to a trial of his cause, and cannot be dismissed from court merely because the jury of view disagree. The circuit judge should have heard appellant's proof, and tried his case.

It would seem from the location of the road, as proposed to be changed in the original order of the county court, and as set out in the reports of both of the juries of view, that the change only involves the land of the applicant. This is, however, not absolutely certain, for the route is made to pass along a lane, which the report of the second jury of view says, " is the line between Corley and Hawkins." If

in fact the proposed road runs in any part over the land of another person, the applicant will go to trial at his peril without giving such person the requisite notice.

The act of 1860 fairly implies, as we have seen, that the application for laying off or changing a public road should be made by petition. The statute does not, however, positively require that the application should be made in that form. Undoubtedly that is the proper and better practice. But we do not think that it is indispensable to the attainment of the ends of justice. If the county court has entertained a less formal application, and made an order specifying where the road is to begin and end, and its general direction, that would be sufficient to give the court jurisdiction, especially where no objection was made to the form of the application. But the circuit judge might, in his discretion require the applicant to file a petition in his court upon the appeal so as to enable him to understand the facts contended for in support of the application.

It may be well enough to add, that the report of the first jury of view seems to authorize the applicant to "erect good gates" across the road, which would be a provision apparently for his benefit, and not for the accommodation of the public, and the court properly refused to confirm the report. Although that change may run the road exclusively over the land of the applicant, the public has an interest in the location, and the county court should protect that interest.

The judgment of the circuit court, in accordance with the report of the Referees, will be reversed, and the cause remanded for further proceedings. The county will pay the costs of this court, the costs of the circuit and county court to abide the result of the cause.