Tammy and Clarence COX,
Claimants–Appellants,

v.

STATE of Tennessee, Defendant–
Appellee.

Court of Appeals of Tennessee,
Western Section, at Jackson.

July 24, 1992.

Application for Permission to Appeal
Denied by Supreme Court
Oct. 26, 1992.

Asa Hoke, Memphis, for claimants/appellants.

Charles W. Burson, Atty. Gen. and Reporter and Charles Everett Robinson, Asst. Atty. Gen., for defendant/appellee.

FARMER, Judge.

Claimant[1] appeals from the order of the Tennessee Claims Commission dismissing her claim against the State of Tennessee.

The facts are largely undisputed. In November 1983 the Memphis Community Service Center (hereinafter "Work Release Center") sent a group of inmates, including Kent Ousley, to a work release assignment at the City Roofing Company on Raines Road in Memphis, Tennessee. Although the group of inmates included both violent and nonviolent criminals, prior to November 1983 Ousley had never been charged with or convicted of a violent crime.

A Work Release Center van delivered the inmates to their work assignment. Under Work Release Center policy, and in accordance with the Center's agreement with City Roofing, at the end of the work day, or if no work was available that day, the inmates were required to wait at City Roofing until the Work Release Center van picked them up. The agreement with City Roofing specified that the Work Release Center van would pick up the inmates promptly at the end of the work day or promptly after being called by City Roofing if the work day ended early.

Despite the Center's policy and its agreement with City Roofing, the van often did not arrive until several hours after being called to pick up inmates. If the Work Release Center received a call to pick up inmates while the van was transporting another group of inmates, the van would first return to the Work Release Center with its current load of inmates before picking up the second group. City Roofing had spoken to personnel at the Center about the Center's failure to promptly pick up inmates, but the problem persisted.

On the morning of November 11, 1983, City Roofing notified the inmates, including Ousley, about midway through the morning that the work day had been cancelled due to rain and that the inmates were being released from work. City Roofing then called the Center to pick up the inmates. The van, however, did not arrive at City Roofing to pick up the inmates until several hours later.

At approximately 1:30 that afternoon, Ousley attacked Claimant in a parking lot near the Criminal Justice Center in downtown Memphis. Ousley forced Claimant into her car and began to drive around the city, continuously beating Claimant and threatening to kill her if she did not shut up. Ousley stopped at several locations throughout the city where he repeatedly raped and sodomized Claimant. As a result of the attacks, Claimant suffered severe physical, emotional, and mental injuries.

On appeal Claimant presents the following issues for review:

I. Did the Commissioner err in finding that [the State] did not owe a duty to [Claimant] concerning the supervision and control of the inmates in the work release program and the prevention of escape of the prisoners?

II. Did the Commissioner err in finding that it was not foreseeable that [Claimant's] injury could occur if the inmates were not adequately supervised and controlled resulting in an inmate escaping?

III. Did the Commissioner err in disallowing as evidence the memorandum written by the Captain of Security for the [W]ork [R]elease [C]enter?

*The Public Duty Doctrine*

In dismissing the claim, the Commissioner found that "the duties of the State in providing public services is [sic] to the public at large and the State cannot be liable to a particular individual unless there is a special relationship between the State and

1. Because Mr. Cox's claim is derivative, and for the sake of simplicity, we have taken the liberty of referring to Mrs. Cox as "Claimant."

that individual and no such relationship has been shown in this claim."

Under the so-called public duty doctrine, as it exists in Tennessee, "private citizens, as such, cannot maintain an action complaining of the wrongful acts of public officials unless such private citizens aver special interest or a special injury not common to the public generally." *Bennett v. Stutts,* 521 S.W.2d 575, 576 (Tenn.1975). Recognizing that the law in Tennessee comports with the overwhelming majority of jurisdictions, the Supreme Court has stated the law as follows:

> Public wrongs or neglect or breach of public duty generally cannot be redressed at a suit in the name of an individual or individuals whose interest in the right asserted does not differ from that of the public generally, or who suffers injury only in common with the public generally, and not peculiar to himself, even, it seems, though his loss is greater in degree, *unless such right of action is given by statute.*

*Bennett,* 521 S.W.2d at 577 (quoting 59 Am.Jur.2d *Parties* § 30 (emphasis added)).

In *Bennett v. Stutts, supra,* the Supreme Court held that eighteen citizens, residents, and taxpayers of Dyer County, Tennessee, lacked standing to bring an action which sought to invalidate the election of the County Superintendent of Public Instruction. Similarly, in *Sachs v. Shelby County Election Commission,* 525 S.W.2d 672 (Tenn.1975), the Court held that a private citizen, in his capacity as a resident and registered voter, did not have standing to sue the election commission in order to challenge the sufficiency of a candidate's qualifying petition. Thus, the public duty doctrine, as applied by the Tennessee courts, has evolved largely as a rule of standing under which private citizens may not sue in their own right to vindicate public wrongs.

The public duty doctrine has also been asserted by public officials to shield them from liability in negligence actions. In *Cary v. Brown,* 3 Tenn.Civ.App. (Higgins) 399 (1912), the plaintiff brought suit against the commissioners of public roads of Hamilton County for injuries received as a result of the commissioners' failure to keep in repair a bridge on a public highway. In affirming the circuit court's judgment directing a verdict in favor of the commissioners, the court stated:

> At common law we are of the opinion there is no liability in this case. The common law rule seems to be that a private person can recover damages from an officer only when he can show special damage to himself, which must be the legal and natural consequences of the wrong act. *Butler v. Kent,* 19 Johns (New York), 223; *State v. Ruth,* 9 S.Dakota, 84 [68 N.W. 189].
>
> Where the breach of duty is one which the officer owes to the public alone, there can be no recovery at the suit of a private individual, although special injury thereby may result to him. *School District Etc. v. Burress,* 89 N.W.Rep., 609.

3 Tenn.Civ.App. (Higgins) at 401.

Under T.C.A. § 9–8–307(d), in an action before the Claims Commission, the State "may assert any and all defenses, including common law defenses, which would have been available to the officer or employee in an action against such an individual based upon the same occurrence." The State argued, and apparently the Commissioner agreed, that the public duty doctrine established a common law defense for the State in that, under the doctrine, any duty owed by the State was to the public in general and not to Claimant as a private individual.

We disagree with this conclusion. The public duty doctrine does not apply where a private right of action is given by statute. *Bennett,* 521 S.W.2d at 577. Therefore, we believe the real question here to be whether the Tennessee Claims Commission Act, T.C.A. § 9–8–301 *et seq.,* by its own terms authorizes the present lawsuit by Claimant. If the Act does authorize such a claim, then the public duty doctrine has no applicability to this case, either as a rule of standing or as a common law defense to negligence.

In *Sweeney v. State,* 768 S.W.2d 253 (Tenn.1989), the claimant brought a cause of action against the State of Tennessee based upon T.C.A. § 9–8–307(a)(1)(J). As pertinent, that section gives the Claims

Commission exclusive jurisdiction to hear and determine all monetary claims against the State of Tennessee for "[d]angerous conditions on state maintained highways." T.C.A. § 9–8–307(a)(1)(J). The Supreme Court held, *inter alia*, that T.C.A. § 9–8–307(a)(1)(J) authorized the claimant to recover damages she sustained while riding as a passenger in an automobile that was wrecked at a dangerous curve on a State maintained highway in Franklin County, Tennessee.

■ We conclude that, similarly, T.C.A. § 9–8–307(a)(1)(E) authorizes the present Claimant to recover against the State for damages she sustained as a result of the State's "[n]egligent care, custody and control of persons." We further conclude that this section imposes a duty upon the State independent of other statutes cited by the parties relative to the duties of State and county workhouses to prevent the escape of prisoners (*see* T.C.A. §§ 41–1–702(c), 41–2–109(2)). *Sweeney,* 768 S.W.2d at 255.

■ We additionally reject the State's argument that T.C.A. § 9–8–307(a)(1)(E) creates a cause of action only on behalf of those in the care, custody and control of the State. By its own terms, the statute authorizes the Claims Commission to determine all monetary claims arising from the negligent care, custody and control of persons. The statute does not limit recovery to persons who suffer injury while in the care, custody and control of the State. In *Learue ex rel. Learue v. State,* 757 S.W.2d 3 (Tenn.App.1987), which the State cited in support of its position, this Court held that T.C.A. § 9–8–307(a)(1)(E) did not apply to persons paying entrance fees to State maintained recreation facilities. 757 S.W.2d at 5. While the Court determined that T.C.A. § 9–8–307(a)(1)(E) pertained to persons confined to State facilities, the Court did not purport to restrict claims brought under T.C.A. § 9–8–307(a)(1)(E) to those brought by such confined persons.

T.C.A. § 9–8–307(a)(1)(G) authorizes the Claims Commission to determine claims arising from the "[n]egligent care, custody or control of animals" but provides that "[d]amages are not recoverable under this section for damages caused by *wild* animals." (emphasis added) The obvious inference to be drawn from this language is that damages would be recoverable for damages caused by tame or domesticated animals. Extending this logic, we conclude that, under § 9–8–307(a)(1)(E), damages are also recoverable for injuries caused by persons in the care, custody and control of the State if such care, custody and control is negligent.

We respectfully disagree with the Commissioner's holding that the public duty doctrine requires the dismissal of this claim. For reasons hereinafter set forth, however, we affirm the Commissioner's dismissal of the claim.

### *Discretionary Function Immunity*

Claimant argues that the acts complained of are not discretionary functions. However, the State maintains that it has never asserted discretionary function immunity as a defense to this claim. The Commissioner found that "all actions complained of herein deal with discretionary duties of State employees for which such employees are immune from liability" and that "pursuant to [T.C.A. §] 9–8–307(d) the State may assert this common law immunity."

■ We agree that, under T.C.A. § 9–8–307(d), the State may assert the common law immunity which has developed in this State with regard to discretionary actions of State employees. *See State ex rel. Robertson v. Farmers' State Bank,* 162 Tenn. 499, 39 S.W.2d 281 (1931); *Buckner v. Carlton,* 623 S.W.2d 102 (Tenn.App.1981). In the recent case of *Bowers ex rel. Bowers v. City of Chattanooga,* 826 S.W.2d 427 (Tenn.1992), the Supreme Court adopted the "planning-operational test," under which "decisions that rise to the level of planning or policy-making are considered discretionary acts which do not give rise to tort liability, while decisions that are merely operational are not considered discretionary acts and, therefore, do not give rise to immunity." *Id.* at 430.

Because we affirm the findings of the Commissioner with regard to the issue of foreseeability, however, we find it unnecessary to determine whether the acts complained of were discretionary. This issue is pretermitted.

*Foreseeability*

■ Claimant argues that, because the Work Release Center inmates included both violent and nonviolent offenders, it was foreseeable that one of the inmates, if allowed to escape, would harm a member of the public such as Claimant. The Commissioner agreed that such an event was foreseeable but held that the question of foreseeability must be determined on the basis of Kent Ousley's actions, prior behavior, and record, and not the actions of other inmates at the Work Release Center. The Commissioner further found that "it was not foreseeable that Ousley would commit the acts of violence against [Claimant]."

In order to establish proximate causation and, ultimately, negligence, the claimant must show that "the harm giving rise to the action could have reasonably been foreseen or anticipated by a person of ordinary intelligence and prudence." *McClenahan v. Cooley*, 806 S.W.2d 767, 775 (Tenn.1991). As stated in *Ray Carter, Inc. v. Edwards*, 222 Tenn. 465, 471, 436 S.W.2d 864, 867 (1969), "an injury which could not have been foreseen nor reasonably anticipated as a probable result of an act or omission is not actionable, and such an act is either the remote cause or no cause of the injury."

As the Supreme Court stated in *McClenahan*, the foreseeability requirement

is not so strict as to require the tortfeasor to foresee the exact manner in which the injury takes place, provided it is determined that the tortfeasor could foresee, or through the exercise of reasonable diligence should have foreseen, the general manner in which the injury or loss occurred. [citations omitted] "The fact that an accident may be freakish does not *per se* make it unpredictable or unforeseen." *City of Elizabethton v. Sluder*, 534 S.W.2d 115, 117 (Tenn.1976). It is sufficient that harm in the abstract could reasonably be foreseen. *Shell Oil Co. v. Blanks*, 46 Tenn.App. 539, 330 S.W.2d 569, 572 (1959).

*McClenahan*, 806 S.W.2d at 775.

In *Williams v. State*, 308 N.Y. 548, 127 N.E.2d 545 (1955), a convict, William Kennedy, escaped from a prison farm and, by use of force, threats, and duress, compelled a local farmer, Albert Williams, to assist Kennedy in escaping by driving and transporting him in the direction of Syracuse. Because of the resulting emotional stress, Williams died the following day from a brain hemorrhage.

Prior to the escape, Kennedy had been convicted of attempted robbery of a taxi driver with an accomplice who was armed with a toy pistol. After serving a sentence of approximately 18 months, Kennedy was paroled but was returned to prison for violating his parole and was subsequently transferred to the prison farm. During his eight months at the prison farm, Kennedy was punished four times for minor violations of prison discipline.

The court determined that Kennedy's previous criminal conviction, violation of parole, and violations of prison discipline could not be said to have foreshadowed his assault upon Williams and did not provide the foreseeability necessary to impose liability. In dismissing the claim of Williams' executrix, the court recognized that

[o]f course to be liable the State need not have been required to foresee the exact manner in which its negligence will result in injury, but merely that some injury will result therefrom. *Lowery v. Manhattan Ry. Co.*, 99 N.Y. 158, 162–163, 1 N.E. 608. Here, nothing in Kennedy's record, his psychiatric history or his prison experience gave any indication that he was likely to wander from the prison and assault members of the public.

*Williams*, 127 N.E.2d at 550.

In *State v. Silva*, 86 Nev. 911, 478 P.2d 591 (1970), an inmate escaped from a state honor camp and raped a woman. In a subsequent suit against the state, the state argued that the assault was not foreseeable. It was undisputed that the inmate, who had been charged with several counts of burglary before his conviction and incarceration, was not known to be a sex offender. Further, the inmate's conduct at the prison had been exemplary. The court, however, refused to direct a verdict in favor of the state on the issue of foreseeabil-

ity and remanded the case for the jury to decide the issue of liability. *Silva*, 478 P.2d at 593–94.

■ Foreseeability is a question of fact. *City of Elizabethton v. Sluder*, 534 S.W.2d 115, 117 (Tenn.1976). Since this is a nonjury case, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the Commissioner. Unless the evidence preponderates against the findings, we must affirm, absent error of law. *Learue ex rel. Learue v. State*, 757 S.W.2d 3, 6 (Tenn.App.1987); T.R.A.P. 13(d).

The evidence showed that Ousley, who was 21 years of age, had been convicted of eight prior offenses, including forgery, receiving stolen property, larceny, and burglary, none of which constituted a violent crime. Additionally, Ousley's disciplinary infractions which occurred at the Work Release Center contained no evidence of violent acts. It is undisputed that the Work Release Center housed inmates who had been convicted of violent crimes and that at least one such inmate, who had been convicted for kidnapping, was assigned to work at City Roofing along with Ousley.

Given the complete lack of evidence of a propensity for violent acts on the part of Ousley, however, we are unable to say that the evidence preponderates against the Commissioner's finding that it was not foreseeable Ousley would commit the acts of violence against Claimant.

### *Evidence of Subsequent Remedial Measures—T.R.E. 407*

■ On appeal Claimant asserted that the Commissioner erred in excluding from evidence a memorandum written by Albert Markle, the former Captain of Security for the Work Release Center. The Commissioner excluded the memorandum based on the State's objection that the memorandum contained evidence of subsequent remedial measures and, thus, was inadmissible under T.R.E. 407.[2]

The memorandum written by Mr. Markle to all shift supervisors stated, *inter alia*, that "[t]he constant problem of having the inmates wait several hours before being picked up will not be tolerated." In her order granting the State's motion to dismiss, the Commissioner specifically found that on November 11, 1983, the Work Release Center van was late in arriving at City Roofing to pick up the inmates and that this was a common problem. In view of this finding, we conclude that the Commissioner's ruling excluding the memorandum did not affect the Commissioner's judgment and, therefore, did not constitute reversible error. T.R.A.P. 36(b).

The judgment of the Claims Commission is affirmed. Costs of this appeal are taxed to appellants for which execution may issue if necessary.

TOMLIN, P.J. (W.S.), and HIGHERS, J., concur.

---

**2.** T.R.E. 407 provides that

[w]hen, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent remedial measures is not admissible to prove strict liability, negligence, or cul-

pable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving controverted ownership, control, or feasibility of precautionary measures, or impeachment.