Billy D. HEMBREE, Sr., and Sharon Hembree, Wrongful Death Beneficiaries and Natural Parents of Billy Hembree, Jr., Deceased; Richard Harding and Kathryn Harding, Wrongful Death Beneficiaries and Natural Parents of Misty Harding, Deceased; Robert L. Huff, Jr.; and David Ross, Plaintiffs–Appellees,

v.

The STATE of Tennessee, Defendant–Appellant.

Supreme Court of Tennessee, at Nashville.

July 1, 1996.

William B. Raiford, III, Merkel & Cocke, P.A., Clarksdale, Mississippi, for Plaintiffs–Appellees.

Charles W. Burson, Attorney General and Reporter, Michael E. Moore, Solicitor General, Michael W. Catalano, Associate Solicitor General, Nashville, for Defendant–Appellant.

## OPINION

BIRCH, Chief Justice.

Lester Peavyhouse had been involuntarily committed on March 1, 1988, following a verdict of "not guilty by reason of insanity" upon a charge of aggravated assault. He was sent to Middle Tennessee Mental Health Institute (MTMHI), a state facility located in Nashville and operated under the supervision of the Commissioner of the Department of Mental Health and Mental Retardation.

On October 31, 1991, Peavyhouse entered a private residence in Clarksville and shot four persons with a .410 gauge shotgun. Two were killed; two were seriously wounded. The surviving victims joined representatives of the deceased victims in an action for damages before the Tennessee Claims Commission. In the complaint, brought pursuant to Tenn.Code Ann. § 9–8–307(a)(1)(E), the claimants chiefly alleged that the state's decision to release Peavyhouse, made prior to October 31, 1991, constituted negligence.

The State, in its first pleading, moved to dismiss the claim on the grounds that the Commission lacked subject-matter jurisdiction[1] and that the claimants failed to state a cause of action upon which relief may be granted.[2] The State insisted that § 9–8–307(a)(1)(E) provides no jurisdictional basis for the maintenance of a claim for injuries inflicted by a "former" mental patient at a state facility because "former" patients are not "persons in the care, custody and control" of the state as the statute requires. While the claimants were attempting to discover the circumstances which led to Peavyhouse's "freedom," the Commissioner entered an order granting the State's motion to dismiss. As a consequence of this somewhat hasty disposition, the record contains nothing definite about Peavyhouse's status relative to MTMHI.

The Court of Appeals reversed the Commissioner's judgment, holding that he had interpreted the statute too narrowly. We granted the State's application for review to clarify the issue and to determine whether confinement in a state institution or facility is a jurisdictional prerequisite to recovery under § 9–8–307(a)(1)(E). We find no such prerequisite and affirm the judgment of the Court of Appeals.

I

As stated, Peavyhouse was judicially committed pursuant to a finding of "not guilty by reason of insanity" upon a charge of aggravated assault.[3] In the committal order, the trial judge stated that he "finds by clear, unequivocal and convincing evidence that [Peavyhouse] is mentally ill, poses a likelihood of serious harm and all less drastic alternatives to commitment to a hospital or treatment resource are unsuitable." This statement, as well as Peavyhouse's lengthy record of violence against others, was includ-

---

1. Tenn. Comp. R. & Regs. 0310–1–1–.12(2)(a)(repealed). This rule was analogous to Tenn. R. Civ. P. 12.02(1).

2. Tenn. Comp. R. & Regs. 0310–1–1–.12(2)(f)(repealed). This rule was analogous to Tenn. R. Civ. P. 12.02(6).

3. The charge arose from an incident in which he attacked his sister with a hatchet.

ed in the complaint. Included also was the allegation that such violence and criminal behavior had resulted in Peavyhouse's commitment in 1972 following a trial upon a charge of the willful destruction or desecration of the United States flag.[4]

Peavyhouse's custodial status with regard to MTMHI on October 31, 1991, is profoundly unclear. This lack of clarity is, however, understandable in light of the fact that no depositions or other proof was available at the time of the Commissioner's ruling. In any event, the record includes a letter to the trial court from Leon S. Joiner, superintendent of MTMHI, dated September 12, 1988. The letter informed the committing judge that Peavyhouse's treatment team, headed by Dr. Sam Okpaku, had determined that "off-campus activities should be added as part of his [Peavyhouse's] treatment plan." Further, the letter advised that "he will soon be ready for referral to vocational rehabilitation services off-campus, which will require that he attend day activities in another location unsupervised by our staff." The letter concludes: "I will authorize Dr. Okpaku to grant privileges to Mr. Peavyhouse at his [Dr. Okpaku's] discretion based on Mr. Peavyhouse's clinical condition." The record contains no response from the trial judge, nor does it contain any further information concerning Peavyhouse's status relative to MTMHI.

Based on this scant record, the Commissioner found that "Lester Peavyhouse was not confined in any state institution on October 31, 1991." To reach this conclusion, the Commissioner apparently interpreted *Learue ex rel. Learue v. State*, 757 S.W.2d 3 (Tenn. App.1987), to hold that one must be *in confinement* in a state institution to be included within the statutory definition of one who is in the "care, custody and control of the state." It is without question that the claimants would have stated a cause of action if Peavyhouse had been confined when he committed these offenses. However, as did the Court of Appeals in its well-reasoned opinion, we conclude that confinement in the literal

sense is not necessarily a prerequisite to the invocation of the Claims Commission's jurisdiction under Tenn.Code Ann. § 9–8–307(a)(1)(E).

## II

■ We must first determine the applicable standard of review in this cause. The Claims Commission had patterned its procedural rules after the Tennessee Rules of Civil Procedure.[5] Therefore, except where the respective rules differ, we construe the Commission's procedural rules according to our decisions construing the Tennessee Rules of Civil Procedure.

■ As previously mentioned, the State moved to dismiss, asserting that the Claims Commission lacked subject-matter jurisdiction and that the complaint failed to state a claim upon which relief may be granted. Included with the claimants' response was the letter from MTMHI's superintendent to the judge who committed Peavyhouse in 1988. The Commissioner considered this letter in granting the State's motion to dismiss. Therefore, since this correspondence was outside the scope of the pleadings, we are compelled to review the Commissioner's order as a grant of a motion for summary judgment, Tenn. R. Civ. P. 56.

■ According to Rule 56.03, summary judgment is rendered in favor of a party upon a showing "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." No presumption of correctness attaches to decisions granting summary judgments because they involve only questions of law. Thus, on appeal we must make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been met. *Cowden v. Sovran Bank/Central South*, 816 S.W.2d 741, 744 (Tenn.1991); *see also Byrd v. Hall*, 847 S.W.2d 208 (Tenn.1993). Accordingly, the State is not entitled to summary judgment if the record contains genu-

---

4. Tenn.Code Ann. § 39–1607 (Supp.1972).

5. Tenn. Comp. R. & Regs. 0310–1–1–.12(2)(a) & (f) (repealed). Presently, with certain exceptions, proceedings before the Commission are conducted pursuant to the Tennessee Rules of Civil Procedure. Tenn.Code Ann. § 9–8–403(a)(1)(1992); Tenn. Comp. R. & Regs. R. 0310–1–1–.01 (1992).

ine issues as to any material fact. *Byrd,* 847 S.W.2d at 211. A fact is material if it "must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Id.*

### III

Central to the resolution of the issue before us is the Claims Commission's jurisdictional authority. Article I, § 17, of the Tennessee Constitution provides that the state may be sued in such manner and in such courts as the legislature by law directs. From 1796 until 1984, the General Assembly was extremely reticent in permitting claims against the state. Moreover, the courts' reticence was evidenced by repeatedly pointing out that suits against the state were in derogation of the common law and that statutes purporting to permit these suits should be strictly construed. *See, e.g., State ex rel. Allen v. Cook,* 171 Tenn. 605, 106 S.W.2d 858, 860 (1937); *Stokes v. University of Tenn.,* 737 S.W.2d 545, 547 (Tenn.App.1987), *cert. denied,* 485 U.S. 935, 108 S.Ct. 1110, 99 L.Ed.2d 271 (1988). However, in 1984 the legislature enacted a sweeping procedure for filing monetary claims against the state. *See* Act of May 24, 1984, ch. 972, 1984 Tenn. Pub. Acts 1026; Tenn.Code Ann. §§ 9–8–305, –307 (Supp.1984). The following year, the legislature amended the statute by adding the following statement: "It is the intent of the general assembly that the jurisdiction of the claims commission be liberally construed to implement the remedial purposes of this legislation." Tenn.Code Ann. § 9–8–307(a)(Supp.1985). We now turn to our analysis of § 9–8–307(a)(1)(E).

Since its enactment in 1984, § 9–8–307(a) has granted the Claims Commission, and its Commissioners individually, exclusive jurisdiction to determine all monetary claims against the state involving the "negligent care, custody and control of persons." Tenn. Code Ann. § 9–8–307(a)(5)(Supp.1984).[6] The State contends that a claim for negligent release does not fall within this grant of jurisdictional authority or any other provision of the Commission's enabling statute. It urges that the legislature intended to waive the state's sovereign immunity only with respect to incidents of negligence in which either the person causing the injury or the person injured was under the state's immediate physical "control." The State relies on the grammatical construction of the statute and two reported decisions, *Learue ex rel. Learue v. State,* 757 S.W.2d 3 (Tenn. App.1987) and *Cox v. State,* 844 S.W.2d 173 (Tenn.App.1992), to maintain that the person causing the injury or the person injured must be in the "care, custody *and* control of the state" at the time the injury occurred. Therefore, urges the State, since Peavyhouse had been released from MTMHI, he was not in the state's "care, custody and control" when the injuries complained of occurred. We believe the State reads the statute and subsequent decisions too narrowly.

In *Learue,* the question presented was whether the state could be held liable for injuries sustained by a fourteen-year-old boy who dove into the shallow portion of a swimming area in a state park. The court held that "a fair reading of the statute [§ 9–8–307(a)(1)(E) ], giving the words their usual and ordinary meaning establishes that the legislature intended that [the statute] was to pertain to persons confined to penal institutions, residences, or health and other similar facilities maintained by the state." *Learue,* 757 S.W.2d at 5. The *Learue* court observed that persons using recreational facilities maintained by the state are not in the "care, custody and control" of the state merely because the state has imposed rules and regulations pertaining to the use of such facilities. *Learue* is factually distinguishable from the case before us. However, contrary to the State's argument, the above-quoted language does not contradict the claimants' argument that the State could be liable for its negligent decision to release Peavyhouse because his release clearly would have been effected when he *was* within the "care, custody and control" of the state.

Moreover, contrary to the State's position, *Cox* is not in conflict with our conclusion that § 9–8–307(a)(1)(E) permits the claimants' suit. In *Cox,* an inmate on work release

---

**6.** Tenn.Code Ann. § 9–8–307(a)(5) is presently codified at § 9–8–307(a)(1)(E) (Supp.1995).

repeatedly raped and sodomized the claimant. The claimant subsequently filed suit with the Claims Commission predicated on the state's "negligent care, custody and control" of the inmate. The Commission dismissed the case, holding that the state had no duty to supervise inmates on work release. The Court of Appeals affirmed the judgment; however, it did so upon its finding that the inmate had no known history of violent behavior. Thus, held the intermediate court, the state could not have foreseen that the inmate would have committed any harmful acts; the State's action, therefore, was not the proximate cause of the claimant's injuries. The court's holding clearly rejected the State's contention that it had no duty to supervise prisoners on work release:

> We conclude that, similarly, T.C.A. § 9–8–307(a)(1)(E) authorizes the present Claimant to recover against the State for damages she sustained as a result of the State's "[n]egligent care, custody and control of persons." We further conclude that this section imposes a duty upon the State independent of other statutes cited by the parties relative to the duties of State and county workhouses to prevent the escape of prisoners.

844 S.W.2d at 176 (citation omitted).

The *Cox* holding, while not perfect guidance, does indeed suggest that the state may be liable under § 9–8–307 for certain decisions regarding persons for whom it is responsible. Liability in this regard comes not so much from physical custody or control; rather, it is the decision to reduce or terminate control or supervision that is scrutinized and may result in liability if that decision is made without due care.

■ The state is responsible for the proper care and control of patients within its mental health facilities. *See* Tenn.Code Ann. § 33–6–109(b), (c) (Supp.1995) (discharge criteria). This responsibility extends to the "release" decision; that is, the decision to release a patient into the community. This decision, if negligently made, may expose the State to liability. Such a construction is consonant with the legislature's expressed intent that such decision be made carefully and cautiously.

Moreover, the vast amounts of state funds and energies directed to rehabilitation on every level bespeak and manifest the state policy. Implementation of this policy, however, necessarily implicates a very delicate balance between the safety of the public and effective rehabilitative measures. Both clamor for preeminence, creating, thereby, a necessary tension between public safety on the one hand and individual liberty on the other.

■ Even though the state may be liable if the decision to release an involuntarily committed patient were negligently made, the state does not ensure the public's safety from release. Thus, it is understandable that "[t]he determination of the state's liability in tort shall be based on the traditional tort concepts of duty and the reasonably prudent person's standard of care." Tenn.Code Ann. § 9–8–307(c).

### IV

■ In the case before us, the claimants charge that the state was negligent in its decision to release Peavyhouse. At the time he was released, Peavyhouse was clearly within the "care, custody and control" of the state because, as the intermediate court correctly noted, "[r]elease decisions can only involve persons who are in the State's care, custody and control." 1995 WL 50066, slip op. at 8. Moreover,

> [e]xcept for several circumstances not applicable here,[7] state officials have authority over the confinement of these individuals and exercise their professional judgment concerning the conditions of confinement and release from custody. Decisions to release or to relax or extend the conditions of confinement relate directly to the care, custody, and control of these inmates or patients. If made negligently, these decisions could result in injury or harm not [only] to the inmate or patient but also to [others].

---

7. These circumstances include patients who have institutionalized themselves voluntarily and who are free to leave the institution at any time, patients whose release is required by court order, and persons who can no longer be held because their term of confinement has expired.

*Id.* Because the alleged negligence arises out of acts or omissions which were alleged to have occurred at a time when Peavyhouse was clearly within the "care, custody and control" of the state, the claimants have stated a cause of action upon which relief can be granted; the Commission clearly has jurisdiction over this claim.

■ We also find that the Commissioner's grant of summary judgment in favor of the State on the grounds that Peavyhouse was not confined in a state institution when he committed the offenses was premature and in error. As stated, summary judgment is only proper where there exists no genuine issue of any material fact. In addition to negligent release, the claimants alleged that Peavyhouse was subject to an involuntary commitment at the time he committed the crimes from which their claims arose. As the Court of Appeals correctly noted, the superintendent's September 1988 letter states only that Peavyhouse's treatment team had determined that he should be permitted to participate in unsupervised, off-campus day activities. There is nothing in the record before us indicating that Peavyhouse was, in fact, permitted to participate in the recommended activities or that he was ever discharged from MTMHI.

In conclusion, while we express no opinion regarding actual liability, we hold that the Commissioner erred when he dismissed the claimants' complaint. First, given that Peavyhouse was literally within the state's custody when the decision to release him was made, the claimants have stated a cause of action under § 9–8–307(a)(1)(E). Second, although we hold that physical confinement in the literal sense is not a prerequisite under § 9–8–307(a)(1)(E), a genuine issue of material fact exists as to whether Peavyhouse was "confined." If Peavyhouse were "confined," then the claimants have stated a cause of action under § 9–8–307(a)(1)(E), and the State was not entitled to summary judgment as a matter of law. Accordingly, the Court of Appeals' judgment vacating the Commis-

sioner's order dismissing the claim and remanding the cause to the Claims Commission for further proceedings is affirmed as modified.

DROWOTA, ANDERSON, REID and WHITE, JJ., concur.