# FILED

**November 30, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

IN THE COURT OF APPEALS OF TENNESSEE

AT NASHVILLE

| | |
|---|---|
| RICHARD L. NORTHCOTT, | ) C/A NO. M1999-01223-COA-R3-CV |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) |
| | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| | ) APPEAL AS OF RIGHT FROM THE |
| TENNESSEE DEPARTMENT OF | ) DAVIDSON COUNTY CHANCERY COURT |
| CORRECTION; DONAL CAMPBELL, | ) |
| Commissioner; BILL KEELING, | ) |
| Sentence Management Services, | ) |
| Department of Correction; FAYE | ) |
| CLAUD, Sentence Management | ) |
| Services, Department of Correction; | ) |
| SHIRLEY PLUNKETT, Records Clerk, | ) |
| Turney Center, | ) |
| | ) HONORABLE ELLEN HOBBS LYLE, |
| Defendants-Appellees. | ) CHANCELLOR |

For Appellant

RICHARD L. NORTHCOTT
Pro Se
Reporter
Only, Tennessee

Division

and

For Appellees

PAUL G. SUMMERS
Attorney General and

Nashville, Tennessee

JOHN R. MILES
Counsel
Civil Rights and Claims

Office of Attorney General

Reporter

# O P I N I O N

AFFIRMED AND REMANDED                                    Susano, J.

The plaintiff, Richard L. Northcott ("Northcott"), is a prisoner in state custody.  He sued the Tennessee Department of Correction ("the Department") and others, claiming that he is entitled to "good conduct"[1]and "prisoner performance"[2]sentence credits allegedly earned by him prior to March 1, 1986.[3]  The trial court granted the Department summary judgment, and Northcott appealed.  He raises issues that present the following questions.

1.  Did the trial court err in determining that Northcott is not entitled to any sentence reduction credits for periods of time prior to March 1, 1986?

2.  Did the trial court err in failing to address Northcott's eligibility for "good conduct" and "prisoner performance" sentence credits?

3.  Did the trial court err in failing to address the constitutionality of Rule

55.01, Tenn.R.Civ.P.?

I.

This is the second time that the plaintiff's claim has been before us.[4]  In our first opinion, we recited the pertinent facts:

> On July 16, 1981, Richard L. Northcott was convicted of criminal sexual conduct in the first degree, and was given a determinate life sentence.  The act for which he was convicted occurred in the summer of 1978.  He claims that after he began his sentence, he was informed that he was not entitled to any sentence reduction credits.
>
> In 1985, the Legislature changed the law pertaining to sentence reduction credits.  Inmates sentenced under the old law, including the petitioner, were told that they could begin to earn sentence credits under the new provisions if they signed a waiver of their right to serve their sentences under the law in effect at the time they were sentenced.[5]  Mr. Northcott, who felt he had nothing to lose, signed the waiver on March 1, 1986, and began receiving sentence reduction credits at the rate prescribed by law.
>
> Mr. Northcott subsequently came to believe that he had been misinformed as to his right to accumulate sentence credits before he signed the waiver, and that he was therefore entitled to have his sentence reduced by a greater number of days than the Department was willing to grant.  He attempted to correct the purported error through a long course of administrative appeals, which concluded on July 31, 1996 with a final denial of his contentions by the legal assistant for the Department of Correction.  Having thus exhausted his administrative remedies, Mr.

> Northcott filed a Petition for Declaratory Judgment under the Uniform Administrative Procedures Act (UAPA) in the Chancery Court of Davidson County on September 27, 1996.

***Northcott v. Tennessee Department of Correction***, C/A No. 01A01-9707-CH-00355, 1998 WL 205224 at *1-2 (Tenn.Ct.App. M.S., filed April 29, 1998).

## II.

We measure the propriety of the trial court's grant of summary judgment against the standard of Rule 56.04, Tenn.R.Civ.P., which provides that summary judgment is appropriate where

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

When reviewing a grant of summary judgment, an appellate court must decide anew if judgment in summary fashion is appropriate. ***Cowden v. Sovran Bank/Central South,*** 816 S.W.2d 741, 744 (Tenn. 1991); ***Gonzalez v. Alman Constr. Co.,*** 857 S.W.2d 42, 44-45 (Tenn.Ct.App. 1993). Since this

determination involves a question of law, there is no presumption of correctness as to the trial court's judgment. *Robinson v. Omer,* 952 S.W.2d 423, 426 (Tenn. 1997); *Hembree v. State,* 925 S.W.2d 513, 515 (Tenn. 1996). In making our determination, we must view the evidence in a light most favorable to the nonmoving party, and we must draw all reasonable inferences in favor of that party. *Byrd v. Hall,* 847 S.W.2d 208, 210 (Tenn. 1993). Summary judgment is appropriate only if no genuine issues of material fact exist and if the undisputed material facts entitle the moving party to a judgment as a matter of law. Rule 56.04, Tenn.R.Civ.P.; *Byrd,* 847 S.W.2d at 211. A "material fact" has been defined as a fact "that must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Byrd,* 847 S.W.2d at 211.

Northcott claims that there are factual disputes that make summary judgment inappropriate. We disagree. While the parties differ as to certain facts, these disputes are not material to our determination in this case. The question before us -- whether Northcott is entitled to sentence reduction credits allegedly earned by him prior to March 1, 1986 -- is a question of law. *See* *Byrd v. Bradley*, 913 S.W.2d 181, 183 (Tenn.Ct.App. 1995). We do not have to resolve any factual disputes in order to reach this question of law.

III.

In 1985, the General Assembly enacted a new sentence reduction program for state prisoners.[6]  The new legislation broadly defined its ambit with respect to then-serving prisoners.  The following were eligible:

> *Any* person who committed a felony, including any Class X felony, prior to December 11, 1985,...

T.C.A. § 41-21-236(c)(3)(1997) (Emphasis added).  The parties to this litigation agree that Northcott was and is eligible to participate in this new "prisoner sentence reduction credits" program.  T.C.A. § 41-21-236(b) (1997).  They also agree that he exercised his right to opt into this new program when he signed a waiver on March 1, 1986, pursuant to the following statutory provision:

> Any person who committed a felony, including any Class X felony, prior to December 11, 1985, may become eligible for the sentence reduction credits authorized by this section by signing a written waiver waiving the right to serve the sentence under the law in effect at the time the crime was committed....

T.C.A. § 41-21-236(c)(3)(1997).  Northcott does not claim that he has been deprived of any prisoner sentence reduction credits to which he is entitled for his behavior and performance from and after the effective date of his March 1, 1986, waiver; but it is clear that the new program operates

prospectively only:

> However, sentence reduction credits
> authorized by this section may be awarded
> only for conduct and/or performance from
> and after the date a person becomes
> eligible under this subsection.

T.C.A. § 41-21-236(c)(3) (1997).  Since this statute does not operate retroactively, it is of no help in addressing the main issue before us.  Thus, the issue remains: Is Northcott entitled to any sentence reduction credits for periods *prior* to March 1, 1986?

IV.

The primary issue now before us was also before us in the case of **Byrd v. Bradley**, 913 S.W.2d 181 (Tenn.Ct.App. 1995).  There are remarkable similarities between the two cases.  In **Byrd**, the defendant, on April 1, 1976, "was given a life sentence on [a] murder conviction."  **Id**. At 183.  In the instant case, Northcott was convicted on July 16, 1981, of criminal sexual conduct in the first degree and was sentenced to life imprisonment.  In both cases, the prisoner signed a waiver pursuant to T.C.A. § 41-21-236(c)(3) (1997).  Each signed the waiver on March 1, 1986.  Both Byrd and Northcott claim that they are entitled to sentence reduction credits for periods of time prior to March 1, 1986.

In ***Byrd***, we held that a defendant who received a
life sentence at a time when T.C.A. § 40-3613 (later
designated as T.C.A. § 40-28-116) was in effect was not
eligible to receive sentence reduction credits for periods of
time prior to the time they opted into the new system of
sentence reduction credits authorized under the 1985
legislation.  As pertinent here, T.C.A. § 40-3613 (later
designated § 40-28-116) provided as follows:

> ...any person who shall have been
> convicted and sentenced to a term of
> imprisonment in the state penitentiary for
> a period or term of sixty-five (65) years
> or more, or life, may become eligible for
> parole provided such person shall have
> been confined or served a term in the
> state penitentiary of not less than thirty
> (30) full calendar years after receiving
> credit for probationary parole as
> authorized in § 40-3612.[7]

In ***Byrd***, we concluded that the statutes in Title 41 of the
Code dealing with sentence reduction credits did not apply "
where the question presented is one of parole eligibility"
under T.C.A. § 40-3613.  ***Id.*** At 184.

It must be remembered that T.C.A. § 40-3613 made an
absolute statement with respect to prisoners such as Byrd and
Northcott who were sentenced to determinate life sentences:
such persons "may become eligible for parole provided such
person[s] shall have been confined or served a term in the
state penitentiary of not less than thirty (30) *full calendar*

*years.*" *Id*. (Emphasis added). Interpreting this statute, the Supreme Court has pointed out that

> [p]arole eligibility on a life sentence can only occur in 30 years. *Good and honor time do not reduce it*. It is extinguished solely by the death of the prisoner or pardon.

*Howell v. State*, 569 S.W.2d 428, 434 n.10 (Tenn. 1978). (Emphasis added). *See also* *McFadden v. State*, 532 S.W.2d 944, 945-46 (Tenn.Crim.App. 1975). It is clear that service of "thirty (30) *full calendar years*," *see* T.C.A. § 40-3613 (emphasis added), means exactly that, "full calendar years," and not years made up of calendar years actually served *and* time "served" by the earning of behavior and/or performance credits.

We recognize that Northcott seeks credits under T.C.A. § 41-21-229 and T.C.A. § 41-21-230, two statutes that were not specifically mentioned in the *Byrd* opinion. We do not find this to be material. T.C.A. § 41-21-229 and -230 are successor statutes to the statutes mentioned in *Byrd*, *i.e.*, T.C.A. §§ 41-332, -334, and -358. Just as the Title 41 statutes mentioned in *Byrd* did not override T.C.A. § 40-3613, there is nothing in the language of T.C.A. §§ 41-21-229 and -230 to indicate that they were intended to modify the import of T.C.A. § 40-3613.

The 1985 legislation pertaining to sentence reduction credits was the first legislation enacted after Northcott's conviction that was clearly applicable, if accepted by execution of a waiver, to pre-December 11, 1985, imposed life sentences. Northcott is receiving the benefit of that 1985 legislation. As a prisoner serving a life sentence, he is not entitled to any sentence reduction credits for any periods of time prior to the effective date of his execution of the opt-in waiver on March 1, 1986.

Northcott relies heavily on an unreported case authored by Judge Koch of the Middle Section of this Court. *See **Jones v. Reynolds***, 01A01-9510-CH-00484, 1997 WL 36 7661 (Tenn.App. M.S., filed July 2, 1997). He puts particular emphasis on the following excerpt from the opinion in that case:

> In 1980 the General Assembly enacted new sentence credit statutes that were intended to completely replace Tenn.Code Ann. §§ 41-332 and 41-334 beginning on July 1, 1981. TENN.CODE ANN. § 41-359 (later designated as Tenn.Code Ann. § 41-21-229) established a system of "good conduct sentence credits" that prisoners could earn by proper behavior, and Tenn.Code Ann. § 41-361 (later designated as Tenn.Code Ann. § 41-21-231) provided a mechanism for converting Tenn.Code Ann. §§ 41-332 and 41-334 credits earned prior to July 1, 1981 to "good conduct sentence credits." *The General Assembly envisioned that the new good conduct sentence credit program would apply across-the-board to*

> *all prisoners* and thus did not provide a
> waiver or opt-in system to prisoners who
> committed crimes prior to July 1, 1981.

*Id*. 1997 WL 367661 at * 3. (Emphasis added).

We believe Northcott is reading the above-quoted italicized statement out of context. In saying that the new good conduct sentence credit program embodied in T.C.A. § 41-21-229 and -231 was "envisioned" by the General Assembly to "apply across-the board to all prisoners," the Court was merely explaining why there was no need to have a specific opt-in provision to make these statutory provisions applicable to prisoners who were sentenced prior to the effective date of the new good conduct credit program. *Jones* does not explicitly state that the credits described in T.C.A. § 41-21-229 and T.C.A. § 41-21-230 could be earned by prisoners, such as Northcott, who were serving life sentences. We believe it is also significant that the Court in *Jones* did not explicitly disagree with or distinguish the holding in *Byrd*. In fact, the *Byrd* decision is not even mentioned in *Jones*. Northcott's reliance on *Jones* is misplaced.

V.

Northcott argues that the trial court failed to specifically address whether he was entitled to "good conduct" or "prisoner performance" credits other than to say that he

was not entitled to any sentence reduction credits prior to his signing of the waiver. Northcott claims that he is entitled to 5,291 days of good conduct credits and to 1,776 days for performance credits. Nothing more needs to be said; if Northcott is not entitled to credits for *any* periods, pre-waiver, it is not necessary to specifically discuss the terms of T.C.A. §§ 41-21-229 and -230 beyond that which we have already said.

## VI.

Northcott also argues that the trial court did not address the issue of the constitutionality of Rule 55.01, Tenn.R.Civ.P.[8] Northcott raises this issue in order to attack the trial court's setting aside of the default judgment granted to him in the initial proceeding. In the first appeal, this Court reviewed and affirmed the trial court's setting aside of the default judgment in Northcott's favor. "Under the law of the case doctrine, an appellate court's decision on an issue of law becomes binding precedent to be followed in later trials and appeals of the same case involving the same issues and facts." *Ladd v. Honda Motor Co.,* 939 S.W.2d 83, 90 (Tenn.Ct.App. 1996). Thus, we decline to address this issue further.

## VII.

For all of the foregoing reasons, the judgment of the trial court is affirmed.  Costs on appeal are taxed to the appellant.  This case is remanded to the trial court for collection of costs assessed below, all pursuant to applicable law.

_____
Charles D. Susano, Jr., J.


CONCUR:


_____
Houston M. Goddard, P.J.


_____
D. Michael Swiney, J.