| KATHERINE KENNING, | ) | |
|---|---|---|
| | ) | |
| Plaintiff/Appellant, | ) | Appeal No. |
| | ) | M1998-00482-COA-R3-CV |
| v. | ) | |

# FILED

**December 17, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | ) | Davidson Circuit |
|---|---|---|
| HCA HEALTH SERVICES OF | ) | No. 97-C-1815 |
| TENNESSEE, INC. d/b/a | ) | |
| DONELSON HOSPITAL, | ) | |
| | ) | |
| Defendant/Appellee. | ) | |

## COURT OF APPEALS OF TENNESSEE

## APPEAL FROM THE CIRCUIT COURT FOR DAVIDSON COUNTY AT NASHVILLE, TENNESSEE

### THE HONORABLE BARBARA HAYNES, JUDGE

ROBERT J. TURNER
Turner Law Offices
208 Third Avenue, North, Suite 100
Nashville, Tennessee 37201
      ATTORNEY FOR PLAINTIFF/APPELLANT

DIXIE W. COOPER
JOE W. ELLIS, II
Gideon & Wiseman
NationsBank Plaza, Suite 1900

414 Union Street
Nashville, Tennessee 37219-1782
ATTORNEYS FOR DEFENDANT/APPELLEE

REVERSED AND REMANDED

WILLIAM B. CAIN, JUDGE

O P I N I O N

This is a premises liability case involving a "slip and fall" accident which resulted in the plaintiff being injured after a fall on the defendant hospital's outside premises. The trial court granted summary judgment to the defendant finding that there was no genuine issue of material fact. On appeal, the plaintiff contends that the trial court improperly granted summary judgment by misapplying the "open and obvious" rule under comparative negligence standards. We conclude that the defendant premises owner did owe a duty of care to the plaintiff under the facts of this case. Accordingly, the trial court's grant of summary judgment is reversed.

## I. Facts

On February 23, 1994, Katherine Kenning ("Plaintiff") took a friend to a doctor's appointment at the Donelson Hospital ("Defendant"). Plaintiff dropped her friend off at the door and parked the car and, while walking up to the building, she fell and injured herself. Plaintiff sued Defendant asserting in her complaint that Defendant negligently constructed its "walkway in such a way that a portion of such walkway was raised in such a fashion that it caught [P]laintiff's heel, which caused her, in turn to trip and fall."

To her second affidavit, Plaintiff attached photographs of the general area in which she fell. The photos depict the parking lot adjacent to the doctor's building

which has a covered drive-through into which cars enter from the parking lot and from which they exit back into the parking lot in order for drivers to drop patients off at the door. It appears that after persons who are parking walk up to the building through the parking lot, they have two options. They can either continue to the door by walking into the covered drive-through or they can step up onto the sidewalk, just outside the covered drive-through, and follow it, alongside the drive-through, to the same entrance. Plaintiff chose to walk on the drive-through and her fall occurred at the point where the asphalt of the parking lot joins the brick surface of the covered drive-through.

Plaintiff claims that her heel hung on a concrete strip that separates this area where the asphalt parking lot connects with the brick surface as there is a 1¼ inch height deviation in the two adjoining surfaces. This raised ridge was not marked or painted; however, other uneven areas only a few feet away were painted yellow to warn of the discrepancy in the heights of juxtaposed surfaces. Plaintiff testified that she did not see the raised area that tripped her in that her attention was diverted to the yellow paint on the raised area a few feet away. Regarding the area where she fell, Plaintiff stated that "unless you were aware of this difference in height or were looking down at your feet to inspect the area, it would not be noticed by a person who was walking normally across that area." While the photographs are not close enough to reveal the deviation in these two surfaces, they do portray that this area is not painted and that the area directly in front of this where the drive-through adjoins the sidewalk is painted yellow to indicate a deviation. Plaintiff said that she was walking in this area because the sidewalk adjacent to the building was not accessible to her because it was obstructed by a tree. The photographs do portray a large tree on the end of the sidewalk.

Gary Michael Green, Director of Plant Operations for Defendant, was responsible for inspecting, supervising, and overseeing maintenance of the premises in and around Defendant Hospital including the location of the drive-through

entrance and exit to the building where Plaintiff fell. Mr. Green testified in his affidavit that there were no reported problems or defects with the drive-through area on or before February 23, 1994, nor did he or anyone in his department ever have or receive any knowledge of any claimed defect relating to this area where Plaintiff fell. Mr. Green testified also that he did not know of anyone else ever falling in this area before.

Plaintiff filed this suit on June 6, 1997[1] alleging a negligence cause of action. Defendant moved for summary judgment and supported its motion by a statement of undisputed material facts, Plaintiff's deposition, Mr. Green's affidavit and photographs of the premises. The court granted Defendant summary judgment finding that there was no genuine issue of material fact.

## II. Standard of Review

We turn first to the standard by which an appellate court must review the decision of a trial court to grant summary judgment. Summary judgment is appropriate when there is no genuine issue of any fact necessary to resolve the substantive claim or defense embodied in the summary judgment motion and the moving party is entitled to a judgment as a matter of law. *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); *see* Tenn R. Civ. P. 56. The party who moves for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1987).

The legal principles which guide an appellate court's review of a trial court's grant of a motion for summary judgment are well settled. Because the trial court's decision involves only a question of law, there is no presumption of correctness attached to this decision. *Hembree v. State*, 925 S.W.2d 513, 515 (Tenn. 1996). The appellate court must review the record anew to determine whether the requirements of Tennessee Civil Procedure Rule 56 have been met. *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). In so doing, a court views the evidence in the light most favorable to the nonmoving party, allows all reasonable inferences in

favor of that party, and discards all countervailing evidence. *Id.* (*citing Byrd*, 847 S.W.2d at 210-11). Summary judgment should be granted if the facts and conclusions permit a reasonable person to reach only one conclusion. *McCall v. Wilder,* 913 S.W.2d 150, 152 (Tenn. 1995). We turn to an application of the relevant law to the facts of the instant case to determine if only one conclusion can be reached.

### III.  Legal Duty

The elements of a negligence claim are well established: a plaintiff must prove (1) a duty of care owed by the defendant to the plaintiff;  (2) conduct by the defendant falling below the standard of care amounting to a breach of the duty;  (3) an injury or loss;  (4) causation in fact;  and (5) proximate causation. *Rice v. Sabir*, 979 S.W.2d 305, 308 (Tenn. 1998);  *Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn.1993). In the instant case, Plaintiff's failure to demonstrate that she will be able to prove each of these elements at trial will entitle Defendant to summary judgment. *See Byrd*, 847 S.W.2d at 215-16.

The initial requirement for a negligence claim, the existence of a legal duty, is a question of law for the court. *Blair v. Campbell*, 924 S.W.2d 75, 78 (Tenn. 1996). This court must determine whether or not Defendant owed a duty to Plaintiff under the circumstances of this case. Duty is the legal obligation that a defendant owes to a plaintiff to conform to the reasonable person standard of care in order to protect that plaintiff against unreasonable risks of harm. *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995). The supreme court has explained that "a risk is unreasonable and gives rise to a duty to act with due care if the foreseeable probability and gravity of harm posed by defendant's conduct outweigh the burden upon defendant to engage in alternative conduct that would have prevented the harm." *Id.* Among the factors for consideration are the following:

> the foreseeable probability of the harm or injury occurring;  the possible magnitude of the potential harm or injury;  the importance or social value of the activity engaged in by defendant;  the usefulness of the conduct to defendant;  the feasibility of alternative, safer conduct and

the relative costs and burdens associated with that conduct; the relative usefulness of the safer conduct; and the relative safety of alternative conduct.

*Id.* (citing Restatement (Second) of Torts, §§ 292, 293 (1964)).

The open and obvious nature of the harm posed by a defendant's conduct does not preclude recovery under our system of comparative fault. "As in any negligence action, a risk is unreasonable and gives rise to a duty if the foreseeability and gravity of harm posed by a defendant's conduct, even if open and obvious, outweigh the burden upon the defendant to engage in conduct that would have prevented the harm." *Coln v. City of Savannah*, 966 S.W.2d 34, 46 (Tenn. 1998). In *Coln*, our supreme court agreed with the majority of jurisdictions which had limited or restricted the traditional "open and obvious" rule in favor or the approach taken by the Restatement (Second) of Torts:

> Nearly every jurisdiction has also relied upon the Restatement (Second) of Torts, § 343A, which states the rule as follows:
>
> > (1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.
>
> (Emphasis added). The word " 'known' denotes not only knowledge of the existence of the condition or activity itself, but also appreciation of the danger it involves," and the word " 'obvious' means that both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment." Restatement (Second) of Torts, § 343A (comment b). The restatement further provides that the premises owner's duty exists if the harm can or should be anticipated notwithstanding the known or obvious danger:
>
> > Such reason to expect harm to the visitor from known or obvious dangers may arise, for example, where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it. Such reason may also arise where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk.

Restatement (Second) of Torts, § 343A (comment f).

*Coln*, 966 S.W.2d at 41.

Thus, the determination of whether a duty is owed requires a balancing of the foreseeability and gravity of the potential harm against the burden imposed in preventing that harm. *Id.* at 39 (*citing McClung v. Delta Square Ltd. Partnership*, 937 S.W.2d 891, 901 (Tenn. 1996)). As a general matter, a premises owner such as the defendant hospital has a duty to exercise reasonable care to its business invitees to make the premises safe. *Eaton v. McLain*, 891 S.W.2d 587, 593 (Tenn. 1994). "[T]he question of whether the [defendant's] general duty of care encompasses the duty to guard against the acts set forth in the complaint involves an analysis of the foreseeability of the risk to which [the plaintiff] was exposed. In other words, the issue is whether [the plaintiff] has made 'any showing from which it can be said that the defendants reasonably knew or should have known of the probability of an occurrence such as the one which caused [her] injuries.' " *Id.* at 594 (*citing Doe v. Linder Constr. Co.*, 845 S.W.2d 173 (Tenn.1992)). In the instant case, whether Defendant hospital's duty encompasses the duty to warn against the ridge in its drive or to modify the construction of its drive involves an analysis of the foreseeability of the risk to which Plaintiff was exposed. *See Mangum v. Golden Gallon Corp.*, No. 01A01-9709-CV-00459, 1999 WL 114221 at *3 (Tenn. App. 1999).

After a review of the evidence, we can not say that, as a matter of law, the unmarked ridge in Defendant's driveway did not create a foreseeable probability of harm. In other words, we find that Defendant owed a duty of care because the 1¼ inch deviation in the level of the surfaces on Defendant's drive-through created a foreseeable probability of harm. Plaintiff testified that this deviation was discernable only from a side angle such that someone approaching the door from the parking lot would not notice it. Even if it were "open and obvious" to a degree, it is significant that the area where Plaintiff fell was not painted yellow while uneven surfaces only a few feet away were painted yellow. As Plaintiff asserted was the case in her fall, the deviation marked by yellow paint in such close proximity could easily distract one's

attention from the unmarked deviation. *See* Restatement (Second) of Torts, § 343A (comment f).

Defendant maintains that it fulfilled its duty by providing a safe route to the entrance of the building via the sidewalk. Defendant claims that it was not foreseeable that pedestrians would choose to walk in the drive-through as opposed to the sidewalk. We disagree. From Plaintiff's photographic evidence, depending on where in the parking lot one had parked, walking on the drive-through may well provide the most direct path to the door. Furthermore, since there was no sidewalk from the parking lot up to the building, it would require a proactive decision to step onto the sidewalk once one had walked through the parking lot and reached the building. It is certainly foreseeable that patrons would choose to approach the building's entrance by continuing to walk on the drive-through. Finally, as Plaintiff noted, the photos depict a tree with low-hanging branches growing on a portion of the sidewalk. While the pictures do not indicate that this tree would prohibit access to the sidewalk, they do show that, in order to circumvent the tree, one may have to walk partially into the drive-though toward the entrance before stepping onto the sidewalk. This further supports our conclusion that it was foreseeable that, once a pedestrian walked around the tree, he or she might avoid using the sidewalk altogether and continue to the entrance by walking on the drive-through.

While there is no evidence that Defendant had actual knowledge of the deviation in the drive-through, it is reasonable to infer that a 1¼ deviation was recognizable such that it should have known. Defendant had an employee who was responsible for inspecting, supervising, and overseeing maintenance of the area where Plaintiff fell. Finally, the burdens of protecting against this harm would have been minimal. Defendant could have easily painted the raised ridge yellow as it had other deviations. It could have posted a sign to alert pedestrians to the potential danger. We therefore find that the foreseeable probability and gravity of harm posed by Defendant's conduct outweighed the burden upon Defendant to engage in alternative conduct that would have prevented the harm.

# IV. Conclusion

For the foregoing reasons, we reverse the decision of the trial court to grant summary judgment to Defendant Donelson Hospital. Plaintiff, Ms. Kenning, has established that Defendant owed her a duty of care as a matter of law. We therefore remand this case to the trial court for further proceedings consistent with this opinion. The costs of this appeal should be taxed to Defendant.


_____
WILLIAM B. CAIN, JUDGE

CONCUR:


_____
BEN H. CANTRELL, P.J., M.S.


_____
PATRICIA J. COTTRELL, JUDGE