IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 3, 2003 Session

## PHILLIP LUCAS, ET AL. v. STATE OF TENNESSEE, MICHAEL E. COLLINS, ET AL. v. STATE OF TENNESSEE

Appeal from the Tennessee Claims Commission
No. 1,604,201 AND 20,100,376    en banc, Commissioners,
Randy C. Camp, Vance W. Cheek, Jr., and W.R. Baker

No. M2002-02810-COA-R9-CV - Filed February 4, 2004

These consolidated cases present two separate factual situations involving alleged liability of the state under the Tennessee Claims Commission Act, Tennessee Code Annotated section 9-8-301, et seq., for dangerous conditions existing on two separate highways. In both cases the State asserted in defense discretionary function immunity. Because this defense is central to both cases, the Claims Commission consolidated the cases for consideration of the applicability of discretionary function immunity. In an en banc order, the Commission, construing Tennessee Code Annotated section 9-8-307(d) and cases based upon that section, overruled the State's motions for summary judgment. We hold that under the plain and unambiguous provisions of Tennessee Code Annotated section 9-8-307(d) the State is not entitled to assert discretionary function immunity in actions under the Tennessee Claims Commission Act and affirm the judgment of the Claims Commission.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Tennessee Claims Commission Affirmed and Remanded**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and PATRICIA J. COTTRELL, J., joined.

Paul G. Summers, Attorney General & Reporter; Michael E. Moore, Solicitor General; Dawn Jordan, Rebecca Lyford, George Coffin, Nashville, Tennessee, for the appellant, State of Tennessee.

Mart G. Fendley, Clarksville, Tennessee, for the appellee, Phillip Lucas.
Tony R.. Dalton, Chad D. Emerson, Knoxville, Tennessee, for the appellee, Michael E. Collins.

### OPINION

At issue in these two consolidated appeals are separate assertions before the Tennessee Claims Commission of tort liability of the state for maintaining dangerous conditions on the highways. David Lucas, son of Phillip and Betty Lucas, died in an automobile accident on March 2, 1990 on State Highway 96 in Robertson County, Tennessee. The complaint alleged that in

constructing and maintaining the highway, at and near the vicinity of the accident, the grade and curvature of the highway was dangerous and that the State had failed to properly bank the curve or warn travelers of the dangerous condition of the road. The single car accident resulted in injuries to David Lucas that were fatal. The State, with supporting affidavits, filed a Motion for Summary Judgment asserting "discretionary function" immunity.

On November 21, 1999, Michael Collins was driving his automobile southbound along State Highway 155 (also known as Briley Parkway) and came upon a portion of the highway alleged to be known as "dead man's curve." Passengers in his vehicle were Deanna L. Collins, Bobby E. Collins and Ruth Collins. It was alleged that one Toni A. Rogers was driving her vehicle northbound on Highway 155, entered "dead man's curve," lost control of her vehicle causing it to become airborne and land on the claimant's vehicle, seriously injuring Michael E. Collins and Deanna L. Collins, and killing Bobby and Ruth Collins. The claim was filed with the Tennessee Claims Commission based upon Tennessee Code Annotated section 9-8-307 for the negligent design and maintenance of the portion of State Highway 155 called "dead man's curve." This claim was met by a Motion for Summary Judgment supported by affidavit on behalf of the State claiming discretionary function immunity. These two cases, along with two other cases not before the Court on this appeal, were consolidated *sua sponte* by the Claims Commission for the purpose of ruling upon separate summary judgment motions in each.

On March 2, 2002, Claims Commissioner W.R. Baker entered an extensive and carefully reasoned order construing the "immunities" provision of Tennessee Code Annotated section 9-8-307(d), distinguishing *Cox v. State*, 844 S.W.2d 173 (Tenn.Ct.App.1992), declining to recognize as controlling authority the unreported decision in *Waters v. State*, 1998 WL 880911 (Tenn.Ct.App.1998) and overruling the State's motions for summary judgment based upon discretionary function immunity.[1]

On April 1, 2002, the State filed in these cases a Motion to Alter or Amend or, in the alternative, for a rehearing en banc. The motion of the State for an en banc hearing before the Claims Commission was granted and, on August 5, 2002, Commissioners Randy C. Camp, Vance W. Cheek, Jr., and W.R. Baker entered an extensive and carefully considered order, once again categorizing *Cox v. State*, 844 S.W.2d 173 (Tenn.Ct.App.1992) as being obiter dicta as to the point in issue and declining to recognize *Waters v. State*, 1998 WL 880911 (Tenn.Ct.App.1998) as precedential authority under Tennessee Supreme Court Rule 4 (H)(1) and once again overruling the motions for summary judgment.

---

[1] The State moved for summary judgment in these cases on the additional basis that the claimants had failed to provide notice of dangerous conditions as required by Tennessee Code Annotated section 9-8-307(a)(I)(J), and, that the State was protected by the statute of repose (TCA 28-3-202). The Claims Commission granted the statute of repose motions insofar as the claims were predicated on acts or omissions occurring more than four years before the respective dates of the claims and further held that questions of material fact remained for determination as to the notice claims. These two rulings are not before the Court on this interlocutory appeal.

Applications for permission to appeal were filed pursuant to Tennessee Rule of Appellate Procedure 9 as to discretionary function immunity challenging the ruling of the Claims Commission. The applications were granted by the Claims Commission and this Court. The consolidated case is now before this Court for disposition.

GOVERNMENTAL (SOVEREIGN) IMMUNITY

In the case of *Cooper v. Rutherford County*, 531 S.W.2d 783 (Tenn.1975), Justice Henry mounted an impassioned assault upon the citadel of governmental immunity, which met with as much success as did Pickett's Charge up Cemetery Ridge at Gettysburg. The Justice opined in dissent:

> Governmental immunity is a cankered, corroded and corrupted area of our law. It is the flaming sword used by cities and counties in Tennessee to [banish] the innocent victims of their wrongs and deny them their traditional day in court. It has become the hallmark of governmental irresponsibility–the defense by which governmental entities stoop to conquer their own citizens.
>
> . . . .
>
> I condemn sovereign immunity. I believe that justice demands, reason dictates, morality mandates and elemental consideration of conscience decree a change in confidence in the quality of justice, which according to Daniel Webster, is 'man's greatest interest on earth.' Man's eternal quest for justice is of equal dignity with his search for certainty.
> I would condemn this legal monstrosity to the oblivion which it so richly deserves.

*Cooper v. Rutherford County*, 531 S.W.2d 783, 785, 792 (Tenn.1975)(Henry, J., dissenting).

In the nearly three decades that have elapsed since *Cooper v. Rutherford County*, no successful challenge has been mounted upon the fundamental premise that the doctrine of governmental immunity in Tennessee is of common law origin.

*Coffman v. City of Pulaski*, 220 Tenn. 642, 422 S.W.2d 429 (1967) survived the attack in *Cooper v. Rutherford County* and remains the law of Tennessee. Therein it is said:

> As to the argument that we should abolish this doctrine of immunity because it is without warrant in the common law as adopted in this State by our Constitution, (which adopted the common law of England as in force in North Carolina in 1796), it is sufficient to say that, accepting the plaintiff-in-error's own argument that the common law should be written by judges to meet the needs of the society expected to act thereunder, it lay within the power of the Supreme Court of this state to adopt

and promulgate the doctrine of immunity presently under assault and the absence of an English precedent is immaterial to its validity.

*Coffman v. City of Pulaski*, 220 Tenn. 642, 645, 422 S.W.2d 429, 431 (Tenn.1967).

Once the common law origin of governmental immunity is established, the long settled rule of strict construction concerning statutes in derogation of the common law places a heavy burden on the back of a plaintiff suing a sovereign in tort. Under this rule:

> It is well settled that a statute will not be construed to alter the common law, further than the act expressly declares or than is necessarily implied from the fact that it covers the whole subject-matter. *Horne v. Railroad Co.*, 1 Cold., 77; *State v. Miller*, 11 Lea, 621; *McCrea v. Galey*, 1 Tenn. 251; *Eaton v. Dickinson*, 3 Sneed, 404; *Moyers v. Brown*, 10 Humph., 77; *Shaw v. Merchants' National Bank of St. Louis*, 101 U.S., 557, 25 L.Ed., 892."

*State v. Cooper*, 120 Tenn. 549, 553; 113 S.W. 1048, 1049 (Tenn.1908); *Olson v. Sharpe*, 235 S.W.2d 11, 12 (Tenn.1950); *see also, Lillienkamp v. Rippetoe*, 133 Tenn. 57, 63, 179 S.W. 628 (1915).

We begin therefore with the premise that at common law the state was absolutely immune from tort liability as were cities and counties within the state. The immunity of the state and the separate immunities of cities and counties developed along different paths through statutory modifications and partial abrogations of immunity.

As to the immunity of the state, the Supreme Court of Tennessee has provided the following guidance:

> As background, we think it important and significant to outline the rights of the State of Tennessee as a sovereign. According to Article I, Section 17 of the Constitution of the State of Tennessee, suits may be brought against the State in such a manner and in such courts as the Legislature may by law direct, and in no other manner.
>
> In view of this, the Legislature has expressly provided by statute (T.C.A. § 20-1702) as follows:
>
> > No court in the state shall have any power, jurisdiction, or authority to entertain any suit against the state, or against any officer of the state acting by authority of the state, with a view to reach the state, its treasury, funds, or property, and all such suits shall be dismissed as to the state or such officers, on motion, plea, or demurrer of the law officer of the state, or counsel employed for the state.
>
> In the case of *State, ex rel. Allen v. Cook, supra*, the Court said:

-4-

Article 1, section 17, of the Constitution, delegating to the Legislature the power to authorize suits against the state, being in derogation of the state's inherent exemption from suit, must itself be strictly construed; hence legislation authorizing suits against the state must strictly pursue the constitutional requirements, and be so plain, clear, and unmistakable in its provisions as to the manner and form in which such suits may be brought as to leave nothing to surmise or conjecture. 171 Tenn. at 611, 106 S.W.2d at 860.

*Brewington v. Brewington*, 387 S.W.2d 777, 778-79 (Tenn.1965).

Sovereign immunity of counties in Tennessee developed on the basis that a county was an arm of the state and since it could exercise only the sovereignty delegated to it by the state legislature, it was shielded by the sovereign immunity of the state.

In *Wood v. Tipton County*, 7 Bax., 112, it was held that a county was no more liable to be sued for the neglect of its officers than is the State for the negligence of its officers in the discharge of their public duties.

But in such matters it can do only such acts as may be allowed, that is, authorized by law. *Shannon*, sec. 496. It can exercise that portion of the sovereignty of the State communicated to it by the Legislature, and no more. *Grant v. Lindsay*, 11 Heis., 651; *Railway Co. v. Wilson County*, 5 Pick., 604.

Its liability to suit only extends to matters of contract and not to torts or the negligence of its employees. Hence an action for damages will not lie for laying off a public road by the County Court, which was afterwards declared by the court to be a shun-pike and ordered to be closed. *Turnpike Co. v. Davidson County*, 14 Lea, 74; *Grant v. Lindsay*, 11 Heis., 651; *Hawkins v. Justices*, 12 Lea, 356.

The general rule is that counties are not liable for torts or negligence in the condition, use, and management of public institutions. Many reasons are assigned.

1. That there is no fund out of which satisfaction could be had.
2. That it is better that an individual should suffer than that the public should sustain an inconvenience.
3. That it is a subordinate political or governmental division of the State.
4. That its function or action in regard to such institutions are legislative, and that neither the State or county could be sued on such account.
5. That counties are instrumentalities of government and partake of the immunities of States while acting in a governmental capacity.

*McAndrews v. Hamilton County*, 105 Tenn. 399, 403-04, 58 S.W.483 (1900).

The common law immunity of cities is essentially based upon the same considerations. *Cruse v. City of Columbia*, 922 S.W.2d 492 (Tenn.1996); *Hawks v. City of Westmoreland*, 960 S.W.2d 10 (Tenn.1997).

We are not concerned in this case with the separate statutory development of the limited abrogation of sovereign immunity made applicable to cities and counties by the Tennessee Governmental Tort Liability Act. Tenn.Code Ann. §§ 29-20-101, et seq. This act is not and never has been applicable to the State of Tennessee or its agencies and departments. *Tennessee Dep't of Mental Health, et al. v. Hughes*, 531 S.W.2d 299 (Tenn.1975).

Prior to the effective date of either the Tennessee Governmental Tort Liability Act in 1973 or the Tennessee Claims Commission Act in 1984, Tennessee recognized a common law immunity for a public official in the performance of a discretionary act.

> The authorities seem to be in accord to the effect that public officials, who owe the performance of a ministerial duty to a particular individual, are liable to one injured as the proximate result of their nonfeasance or misfeasance in the performance of such duty. Where the duty is absolute, certain, and imperative, and is simply ministerial, the officer is liable in damages to any one specially injured, either by his omitting to perform the task or by performing it negligently or unskillfully. On the other hand, where his powers are discretionary, and to be exerted or withheld according to his own judgment, he is not liable to any private person for a neglect to exercise those powers, nor for the consequences of a willful exercise of them, where no corruption or malice can be imputed to him, and he keeps within the scope of his authority. Some of the cases refer to an officer possessing such discretionary powers as judicial or *quasi*-officer. But this rule goes no further than to relieve public officials of liability for nonfeasance and for the misfeasance of their servants or agents. *Moynihan v. Todd*, 188 Mass., 301, 74 N.E., 367, 108 Am. St. Rep., 473; *Smith v. Zimmer*, 45 Mont., 282, 125 Pac., 420; Shearman & Redfield on Neg. (3 Ed.), section 156; *Doeg v. Cook*, 126 Cal., 213, 58 Pac., 707, 77 Am. St. Rep., 171; *Tholkes v. Decock*, 125 Minn., 507, 147 N.W., 648, 52 L.R.A. (N.S.), 142, and notes.

*Hale v. Johnston*, 140 Tenn. 182, 197-98, 203 S.W. 949, 952-53 (1918).[2]

At common law the sovereign entity, be it the state, a city, or a county, had no "discretionary act" immunity and indeed needed none. The sovereign entity was already absolutely immune under the common law doctrine of sovereign immunity. Because of sovereign immunity the entity was not liable in respondeat superior for the acts or omissions of its agents, servants, or employees, except in cases where such immunity was modified by statute or the entity was exercising proprietary functions. *Memphis v. Kimbrough*, 59 Tenn. 133 (1873).

"Discretionary act" immunity developed to protect officers, employees and agents of the governmental entity in their individual capacity since they otherwise were not protected by the umbrella of sovereign immunity. As one authority stated:

---

[2] The rule stated in *Hale v. Johnston* is exhaustively annotated in 52 L.R.A. (new series) 142 (1914).

The liability of public officers for the negligent failure to discharge ministerial duties expressly imposed upon them by law, in consequence of which injury is suffered by an individual member of the community, is well settled. The general rule is tersely stated by Mr. Justice Bunn in *Howley v. Scott*, 123 Minn. 159, 51 L.R.A. (N.S.) 137, 143 N.W. 257, and as there laid down is followed and applied by practically all the courts. 23 Am. & Eng. Enc. Law, 377; 2 Shearm. & Redf. Neg. 303 et seq.; *Anne Arundel County v. Duckett*, 83 Am. Dec. 557, and note (20 Md. 468); 1 Dill. Mun. Corp. 5th ed. 483. This is true notwithstanding the fact that the county, town, or other municipality which they may represent is not responsible at the suit of a private person, either for their nonfeasance or misfeasance. The wrong of the officer is not the wrong of the municipal subdivision he may represent, but that of the officer, and he alone is responsible therefor, except perhaps where by law the municipality is equally liable. The county is not responsible to private persons for the torts of its sheriff, county auditor, or other officer, yet the officer himself, for his negligence in respect to the performance of his ministerial duties, is liable to any person who may suffer in consequence of such neglect.

*Tholkes v. Decock*, 125 Minn. 507, 509, 147 N.W. 648, 52 L.R.A. (N.S.) 142, 146-47 (1914).

If *Tholkes v. Decock* applied to all acts of public officials rather than only to those purely ministerial, the position of a public employee would indeed be precarious. To modify this general exposure to liability, both the common law and statutory enactments developed "discretionary act" immunity. As one authority has observed:

> *Executive officers and employees.* Public employees of the executive branch –everyone who is not in the legislative or judicial branches–were originally liable for their torts and certainly for those committed in excess of their authority. One solution holds state officers liable only for gross negligence or for specified conduct. In the twentieth century, state courts developed immunities for officers and employees of public entities. A little authority even provides an absolute immunity to higher level state officers, at least as to defamation or as to matters in which it is especially important for high level officers to feel unhampered by possible legal actions. More generally, officers and employees are said to enjoy qualified immunity for discretionary acts, but not for ministerial acts. The discretionary immunity is qualified or conditional because it is usually lost if the officer is guilty of bad faith, malice, corruption, wanton misconduct or the like.

Dobbs "The Law of Torts, Vol. 1, Ch. 15, sec. 273, 734-35 (2001).

The term "discretionary function" was introduced into the law of Tennessee when the Tennessee Governmental Tort Liability Act was enacted by Chapter 345 of the Public Acts of 1973. This Act, applicable to local government entities, partially abrogated governmental immunity with Tennessee Code Annotated section 29-20-205 providing, in part: "Immunity from suit of all

governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of: (1) The exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused."

This Act served the dual purpose (within the limits provided by the statute) of removing immunity of the sovereign entity and shielding the employee, acting within the scope of his authority, from liability to third persons. *Hill v. City of Germantown*, 31 S.W.3d 234 (Tenn.2000).

The Act did not define "discretionary function" leaving Tennessee courts to fill the void thereby created by falling back on the "discretionary" and "ministerial" definitions in *Hale v. Johnston*. Noting that other jurisdictions had interpreted their statutory "discretionary function" language, Judge Franks, dissenting in *Davis v. City of Cleveland*, 709 S.W.2d 613 (Tenn.Ct.App.1986), urged adoption of a "planning-operational" test as the proper standard. *Davis*, 709 S.W.2d at 616. The supreme court responded in *Bowers v. City of Chattanooga*, 826 S.W.2d 427 (Tenn.1992), a case predicated upon the Tennessee Governmental Tort Liability Act, by adopting a "planning-operational" test and modifying *Hale v. Johnston's* standard accordingly.

As we have observed, the Tennessee Governmental Tort Liability Act is not applicable to the case at bar and this discussion is made only in response to the position of the State of Tennessee that it is entitled, under Tennessee Code Annotated section 9-8-307(d), to assert "discretionary function" immunity in this case. The position of the State is not persuasive as it contradicts Tennessee Code Annotated section 9-8-307(d).

THE CLAIMS COMMISSION ACT

Keeping in mind that sovereign immunity is the rule, we turn now to the Tennessee Claims Commission Act.

Central to the resolution of the issue before us is the Claims Commission's jurisdictional authority. Article I, § 17, of the Tennessee Constitution provides that the state may be sued in such manner and in such courts as the legislature by law directs. From 1796 until 1984, the General Assembly was extremely reticent in permitting claims against the state. Moreover, the courts' reticence was evidenced by repeatedly pointing out that suits against the state were in derogation of the common law and that statutes purporting to permit these suits should be strictly construed. *See, e.g., State ex rel. Allen v. Cook*, 171 Tenn. 605, 106 S.W.2d 858, 860 (1937); *Stokes v. University of Tenn.*, 737 S.W.2d 545, 547 (Tenn.App.1987), *cert. denied*, 485 U.S. 935, 108 S.Ct. 1110, 99 L.Ed.2d 271 (1988). However, in 1984 the legislature enacted a sweeping procedure for filing monetary claims against the state. *See* Act of May 24, 1984, ch 972, 1984 Tenn. Pub. Acts 1026; Tenn.Code Ann. §§ 9-8-305, -307 (Supp.1984). The following year, the legislature amended the statute by adding the following statement: "It is the intent of the general assembly that the

-8-

jurisdiction of the claims commission be liberally construed to implement the remedial purposes of this legislation." Tenn.Code Ann. § 9-8-307(a)(Supp.1985). *Hembree v. State*, 925 S.W.2d 513, 516 (Tenn.1996).

The Tennessee Claims Commission Act, subject to its monetary cap on recoverable damages, accomplished a sweeping abrogation of sovereign immunity as to the State of Tennessee relative to acts or omissions of state employees.[3] Pursuant to the statute, sovereign immunity is abrogated as to:

(C)   Negligently created or maintained dangerous conditions on state controlled real property.  The claimant under this subsection must establish the foreseeability of the risks and notice given to the proper state officials at a time sufficiently prior to the injury for the state to have taken appropriate measures;

. . . .

(I)  Negligence in planning and programming for, inspection of, design of, preparation of plans for, approval of plans for, and construction of, public roads, streets, highways, or bridges and similar structures, and negligence in maintenance of highways, and bridges and similar structures, designated by the department of transportation as being on the state system of highways or the state system of interstate highways;

(J) Dangerous conditions on state maintained highways.  The claimant under this subsection must establish the foreseeability of the risk and notice given to the proper state officials at a time sufficiently prior to the injury for the state to have taken appropriate measures;

Tenn. Code Ann. § 9-8-307(a)(C)(I)(J) (2003 Supp.).

While the Tennessee Governmental Tort Liability Act applicable to local government entities provides immunity to the local government entity in performance by an employee of a "discretionary function," (Tenn. Code Ann. § 29-20-205(a)), the Tennessee Claims Commission Act provides no such immunity for the State of Tennessee.  The controlling part of the Claims Commission Act provides:

(c)  The determination of the state's liability in tort shall be based on the traditional tort concepts of duty and the reasonably prudent person's standard of care.

(d)  The state will be liable for actual damages only.  No award shall be made unless the facts found by the commission would entitle the claimant to a judgment

---

[3]  A "state employee," as pertinent to this case, is defined as "any person who is a state official, including members of the General Assembly and legislative officials elected by the General Assembly, or any person who is employed in the service of and whose compensation is payable by the state, or any person who is employed by the state whose compensation is paid in whole or in part from federal funds."  Tenn.Code Ann. § 8-42-101(3)(A).

in an action at law if the state had been a private individual. The state will not be liable for punitive damages and the costs of litigation other than court costs. The state will not be liable for willful, malicious, or criminal acts by state employees, or for acts on the part of state employees done for personal gain. The state may assert any and all defenses, including common law defenses, which would have been available to the officer or employee in an action against such an individual based upon the same occurrence. The state may assert any *absolute* common law immunities available to the officer or employee, however, good faith common law immunity may not be asserted.

Tenn. Code Ann. § 9-8-307(c)(d)(Supp.2003)(emphasis added).

The Supreme Court of Tennessee has noticed the clash between the strict construction rule established in *State v. Cook*, 171 Tenn. 605, 106 S.W.2d 858 (Tenn.1937) and *Brewington v. Brewington*, 215 Tenn. 475, 387 S.W.2d 777 (Tenn.1965), and the legislatively-mandated liberal construction rule established by Tennessee Code Annotated section 9-8-307(a)(3) relative to the jurisdiction of the Claims Commission. *See Stewart v. State*, 33 S.W.3d 785, 791 (Tenn.2000); *Cf. Northland Insurance Co. v. State*, 33 S.W.3d 727, 730 (Tenn.2000). However, there is room for neither strict construction nor liberal construction when the controlling statutory provision is clear and unambiguous. "When the language contained within the four corners of a statute is plain, clear, and unambiguous, the duty of the courts is simple and obvious, 'to say sic lex scripta, and obey it.' " *ATS Southeast, Inc. v. Carrier Corp.*, 18 S.W.3d 626, 629-30 (Tenn.2000); *see also Hawks v. City of Westmoreland*, 960 S.W.2d 10, 16 (Tenn.1997); *Miller v. Childress*, 21 Tenn. 320, 321-22 (1841).

The entire statutory purpose of the Tennessee Claims Commission Act is to establish the state's liability in tort based on the traditional tort concepts of duty and the reasonably prudent persons' standard of care. *See* Tenn. Code Ann. § 9-8-307(c)(Supp.2003). As restraint on this purpose, the same statute provides: "For causes of action arising in tort, the state shall only be liable for damages up to the sum of three hundred thousand dollars ($300,000) per claimant and one million dollars ($1,000,000) per occurrence." Tenn. Code Ann. § 9-8-307(e). Within these prescribed monetary limits, the abrogation of sovereign immunity in Tennessee Code Annotated section 9-8-307(a)(C)(I)(J) is unconditional as to liability in tort for actual damages.

It is the provision of the statute reserving to the state certain preexisting defenses on which the decision in this case must be predicated. The statute provides in part: "The state may assert any and all defenses, including common law defenses, which would have been available to the officer or employee in an action against such an individual based upon the same occurrence. The state may assert any absolute common law immunities available to the officer or employee, however, good faith common law immunity may not be asserted." Tenn. Code Ann. § 9-8-307(d)(Supp.2003).

Clearly only "absolute" common law immunities remain available to the state. Absolute immunity is a well defined doctrine at common law. *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct.

984, 47 L.Ed.2d 128 (U.S.1976). "Qualified immunity" is likewise well defined at common law. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (U.S.1982).

The Supreme Court has consistently held that government officials are entitled to some type of immunity from suits for damages. "[P]ublic officers require this protection to shield them from undue interference with their duties and from potentially disabling threats of liability." *Harlow v. Fitzgerald*, 457 U.S. 800, 806, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396 (1982). Two types of immunity defenses have generally been recognized: absolute immunity and qualified immunity. Absolute immunity defeats a suit at the outset, provided that the official's actions are within the scope of the immunity. *Imbler v. Pachtman*, 424 U.S. 409, 419 n. 13, 96 S.Ct. 984, 989 n. 13, 47 L.Ed.2d 128 (1976). Qualified immunity is asserted as a defense, and shields government officials performing discretionary functions from civil liability if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald, supra*, 457 U.S. at 818, 102 S.Ct. at 2738.

"[O]fficials whose special functions or constitutional status require[] complete protection from suit" are accorded absolute immunity. *Id*. at 807, 102 S.Ct. at 2732. Absolute immunity from suit has been accorded to judges, *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 109, 55 L.Ed.2d 331 (1978), prosecutors, *Imbler v. Pachtman, supra*, legislators, *Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 95 S.Ct. 1813, 44 L.Ed.2d 324 (1975), and to federal agency officials who perform adjudicatory or prosecutorial functions. *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). The Supreme Court has been cautious in extending the protection of absolute immunity, and has noted that "federal officials who seek absolute exemption from personal liability for unconstitutional conduct must bear the burden of showing that public policy requires an exemption of that scope." *Id.* at 506, 98 S.Ct. at 2911.

The Supreme Court has provided that qualified immunity from damages liability is the general rule for executive officials charged with constitutional violations. *Id.* at 507, 98 S.Ct. at 2911. Qualified immunity is an attempted balance of the competing values of protecting individuals' constitutional rights and protecting officials who are required to exercise their discretion, in order to encourage the vigorous exercise of official authority. *Harlow v. Fitzgerald, supra*, 457 U.S. at 813-14, 102 S.Ct. at 2736; *Butz v. Economou, supra*, 438 U.S. at 506, 98 S.Ct. at 2910.

*Ray v. Pickett*, 734 F.2d 370, 371-2 (C.A.Mo., 1984).

Qualified immunity has been historically referred to as "good faith immunity." *See Winchester v. Little*, 996 S.W.2d 818, 826 (1998), perm. app. denied July 6, 1999, cert. denied 528 U.S. 1026, 120 S.Ct. 543, 145 L.Ed.2d 421 (Nov.29,1999); *Gomez v. Toledo*, 446 U.S. 635, 64 L.Ed.2d 572, 100 S.Ct. 1920, (1980); *Wood v. Strickland*, 420 U.S. 308, 43 L.Ed.2d 214, 95 S.Ct. 992 (1975). While the "good faith" standard was adjusted in *Harlow v. Fitzgerald*, 457 U.S. 800,

73 L.Ed.2d 396, 102 S.Ct. 2727 (U.S.1982) to shield government officials from liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." 73 L.Ed.2d at 410, it is clear that *Harlow* did not convert qualified "good faith" immunity into absolute immunity since the case was remanded for reconsideration rather than simply dismissed. Absolute immunity defeats a suit at the outset and nothing remains to be addressed by an order of remand. It is only qualified immunity that would allow remand for consideration of the factual basis for either a "good faith" standard as pre-existed *Harlow v. Fitzgerald*, or a factual determination post *Harlow v. Fitzgerald* that official conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

It has long been recognized that absolute immunity envisions the tyranny of abuse of power on an individual basis by persons clothed with authority. The justification for absolute immunity is nowhere better expressed than by Judge Learned Hand in *Gregoire v. Biddle*, 177 F.2d 579, (2nd Cir.1949).

It does indeed go without saying that an official, who is in fact guilty of using his powers to vent his spleen upon others, or for any other personal motive not connected with the public good, should not escape liability for the injuries he may so cause; and, if it were possible in practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties. Again and again the public interest calls for action which may turn out to be founded on a mistake, in the face of which an official may later find himself hard put to it to satisfy a jury of his good faith. There must indeed be means of punishing public officers who have been truant to their duties; but that is quite another matter from exposing such as have been honestly mistaken to suit by anyone who has suffered from their errors. As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation. Judged as res nova, we should not hesitate to follow the path laid down in the books.

The decisions have, indeed, always imposed as a limitation upon the immunity that the official's act must have been within the scope of his powers; and it can be argued that official powers, since they exist only for the public good, never cover occasions where the public good is not their aim, and hence that to exercise a power dishonestly is necessarily to overstep its bounds. A moment's reflection shows, however, that that cannot be the meaning of the limitation without defeating the whole doctrine. What is meant by saying that the officer must be acting within his power cannot be more than that the occasion must be such as would have justified

the act, if he had been using his power for any of the purposes on whose account it was vested in him.

*Gregoire v. Biddle*, 177 F.2d at 581.

The Court of Appeals for the Sixth Circuit, affirming the trial court in a rather celebrated civil rights case, delineated the time-honored distinctions between absolute immunity on the one hand and qualified immunity on the other in unmistakable terms in the case of *Spurlock v. Satterfield*, 167 F.3d 995 (6th Cir.1999). In that case *Spurlock* and his co-defendant Marshall had been prosecuted for murder predicated in part upon the testimony of Deputy Sheriff Danny Satterfield. Further investigation, after the conviction of Spurlock, established that other persons had committed the murder and the Spurlock-Marshall convictions were set aside. In the civil rights action, Satterfield claimed in defense that he was entitled to absolute immunity for his witness testimony and also absolute immunity for his non-testimonial acts.[4]

As to his witness testimony the court held that he was entitled to absolute immunity. Said the court:

> The issue here is not simply one of providing false testimony at trial, or even, for that matter, conspiring to give false testimony. It is well-settled that witnesses are granted absolute immunity from suit for all testimony provided in judicial proceedings. *See Briscoe v. LaHue*, 460 U.S. 325, 330-31, 103 S.Ct. 1108. 75 L.Ed.2d 96 (1983). Thus, it is clear that Satterfield would be insulated from liability for any testimony that he provided as a witness at trial, no matter how egregious or perjurious that testimony was alleged to have been. Accordingly, the district court correctly found that Satterfield was absolutely immune from suit for his testimony during Spurlock's criminal trial, and we easily affirm the district court's conclusion in that regard. Moreover, we note also that the mere fact that plaintiffs may allege a conspiracy to render false testimony, as opposed to simply alleging that one person testified falsely at trial, does not waive absolute testimonial immunity. *See Alioto v. City of Shively, Kentucky*, 835 F.2d 1173, 1174-75 (6th Cir.1987); *Macko v. Byron*, 760 F.2d 95, 97 (6th Cir.1985). Thus, Satterfield is correct that an alleged conspiracy to provide false testimony does not abrogate his right to absolute testimonial immunity.

167 F.3d 995, 1001 (6th Cir.1999).

As to his non-testimonial actions, the court first rejected his claim of absolute immunity and then addressed his alternative claim of qualified immunity.

---

[4] Satterfield, in addition to his false testimony, attempted to persuade a co-defendant, Apple, to lie and claim to have been a witness to the murder and further gave Apple "hush money" after the plaintiffs' trials in order to induce his continued silence.

Qualified immunity, like absolute immunity, is also available as an affirmative defense that protects public officials not only from liability, but also from the "burdens of trial and discovery." *English*, 23 F.3d at 1089. *See also Noble v. Schmitt*, 87 F.3d 157, 161 (6th Cir.1996). Officials who are not entitled to absolute immunity may, in certain instances, "enjoy the protection of qualified immunity." *Achterhof*, 886 F.2d ta 829. In examining a claim for qualified immunity, we must balance the need for public officials to be free from the constant fear of lawsuits brought while performing their official duties, with the recognition that "[i]n situations of abuse of office, an action for damages may offer the only realistic avenue for vindication of constitutional guarantees." *Harlow v. Fitzgerald*, 457 U.S. 800, 814, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In *Harlow*, the Supreme Court articulated the test for qualified immunity and stated that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id*. at 818, 102 S.Ct. 2727 (abandoning the subjective good faith approach to addressing qualified immunity for the more objective reasonableness test); *see also Noble*, 87 F.3d 375, 386 (6th Cir.1994); *Adams v. Metiva*, 31 F.3d 375, 386 (6th Cir.1994).

167 F.3d 995, 1005 (6th Cir.1999).

The court thereupon rejected Satterfield's claim of qualified immunity and affirmed the trial court's judgment for Spurlock on the basis of his alleged non-testimonial acts.

As to the procedural aspects of a qualified immunity defense, the Sixth Circuit Court of Appeals has observed:

"Qualified or 'good faith' immunity is an affirmative defense that is available to government officials performing discretionary functions." *Rich v. City of Mayfield Hts.*, 955 F.2d 1092, 1094 (6th Cir.1992). "The ultimate burden of proof is on the plaintiff to show that the defendants are not entitled to qualified immunity." *Id*. at 1095 (emphases added). The Sixth Circuit, en banc, has recently defined the components of the qualified immunity defense:

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established [federal] statutory or constitutional rights of which a reasonable person would have known. The procedure for evaluating claims of qualified immunity is tripartite: First, we determine whether a constitutional violation has occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence,

-14-

> to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights. *Williams v. Mehar*, 186 F.3d 685, 691 (6th Cir.1999) (en banc) (quotations omitted; brackets added) (citing *Harlow v. Fitzgerald*, 475 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Dickerson v. McClellan*, 101 F.3d 1151, 1157-58 (6th Cir.1996)).

*Scott v. Clay County, Tennessee*, 205 F.3d 867, 873-74, n. 9 (6th Cir.2000).

The Claims Commission, in its August 5, 2002 Order, states "it appears that what the state calls the 'qualified immunity doctrine' is in reality just an adaptation of the discretionary acts doctrine to actions brought under 42 U.S.C., section 1983." While there is, in the context of this case, barely marginal distinction between the qualified immunity doctrine and the discretionary acts doctrine, qualified immunity is of ancient origin. In *Scheuer v. Rhodes*, 416 U.S. 232, 40 L.Ed.2d 90, 94 S.Ct. 1683 (U.S.1974), while tracing the origin of qualified immunity to the statute of Westminster I, 3 Ewd., 1, c. 24 (1275) and observing that "good-faith performance of a discretionary duty has remained, it seems as a defense," and after referring to absolute immunity the Court goes on to state:

> [I]f, on the other hand, the immunity is not absolute but rather one that is qualified or limited, an executive officer may or may not be subject to liability depending on all the circumstances that may be revealed by evidence. The concept of the immunity of government officers from personal liability springs from the same root considerations that generated the doctrine of sovereign immunity. While the latter doctrine–that the "King can do no wrong" –did not protect all government officers from personal liability, the common law soon recognized the necessity of permitting officials to perform their official functions free from the threat of suits for personal liability.

*Scheuer*, 416 U.S. at 239.

Any lingering doubt that "discretionary function" immunity is, in fact, a qualified immunity and not an absolute immunity is settled by the United States Supreme Court in *Anderson v. Creighton*, 483 U.S. 635, 97 L.Ed. 523, 107 S.Ct. 3034 (1987) wherein the court observed the tension between government officials abusing their offices on the one hand and being honestly mistaken as to their conduct on the other. Said the court:

> Our cases have accommodated these conflicting concerns by generally providing government officials performing discretionary functions with a qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated. *See, e.g., Malley v. Briggs*, 475 U.S. 335, 341, 89 L.Ed.2d 271, 106 S.Ct. 1092 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly

-15-

violate the law"); *id*., at 344-345, 89 L.Ed.2d 271, 106 S.Ct. 1092 (police officers applying for warrants are immune if a reasonable officer could have believed that there was probable cause to support the application); *Mitchell v. Forsyth*, 472 U.S. 511, 528, 86 L.Ed.2d 411, 105 S.Ct. 2806 (1985) (officials are immune unless "the law clearly proscribed the actions" they took); *Davis v. Scherer*, 468 U.S. 183, 191, 82 L.Ed.2d 139, 104 S.Ct. 3012 (1984); *id*., at 198, 82 L.Ed.2d 139, 104 S.Ct. 3012. (Brennan, J., concurring in part and dissenting in part); *Harlow v. Fitzgerald, supra*, at 819, 73 L.Ed.2d 396, 102 S.Ct. 2727. Cf., e.g., *Procunier v. Navarette*, 434 US 555, 562, 55 L.Ed.2d 24, 98 S.Ct. 855 (1978). Somewhat more concretely, whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the "objective legal reasonableness" of the action, *Harlow*, 457 U.S., at 819, 73 L.Ed.2d 396, 102 S.Ct. 2727, assessed in light of the legal rules that were "clearly established" at the time it was taken, *id.*, at 818, 73 L Ed 2d 396, 102 S Ct 2727.

*Anderson*, 483 U.S. at 638-39, 107 S.Ct. 3038, at 530 (1987).

Before discussing further the controlling issue involving "discretionary function" immunity it is helpful to consider the legislative history of the controlling provisions of the Tennessee Claims Commission Act. In the original Act creating the Claims Commission, the controlling provision simply stated: "The state may assert any and all defenses, including common law defenses, which would have been available to the officer or employee in an action against such individuals based upon the same occurrence." 1984 Tenn. Pub. Acts 972, sec. 8(d). Since the cases are clear throughout the country that common law immunities are affirmative defenses, we may assume, that under the original Act, both absolute immunities and good faith immunities were available to the state under this provision of the Act. Chapter 105 of the Public Acts of 1985 amended the Claims Commission Act by adding to the above sentence a provision that "the state may assert any absolute common law immunities available to the officer or employee, however, good faith common law immunity may not be asserted." 1985 Tenn. Pub. Acts 105, sec. 6.[5] By this section of Chapter 105, the legislature clearly determined to separate common law defenses from common law immunities, and to restrict the state to the use of only absolute common law immunity.

At bar the discussion in brief and argument centered around whether or not "discretionary function" immunity was in fact "good faith" immunity and thus foreclosed to the state under the express provisions of Tennessee Code Annotated section 9-8-307(d). The discussion is academic, as under no circumstances is any immunity available to the state which could not be characterized as "absolute immunity," such being the only type of immunity that survived the enactment of the Tennessee Claims Commission Act, as amended by Chapter 105 of the Public Acts of 1985.

---

[5] Section 1 of Chapter 105 added the provision that "it is the intent of the General Assembly that the jurisdiction of the Claims Commission be liberally construed to implement the remedial purposes of this legislation."

Efforts to superimpose the "planning-operational" test of *Bowers v. City of Chattanooga* onto the Tennessee Claims Commission Act are to no avail given the explicit language used by the legislature in limiting immunities available to the state to "absolute" immunities. The "planning operational" test of *Bowers* involves a construction of the "discretionary function" provisions of the Tennessee Governmental Tort Liability Act. Tenn. Code Ann. § 29-20-205(a). Aside from the fact that such discretionary function immunity is foreign to the Tennessee Claims Commission Act, it fails to qualify as an "absolute" immunity.

The decision herein is at odds with certain language in four Tennessee cases, these being chronologically *Cox v. State*, 844 S.W.2d 173 (Tenn.Ct.App.1992); *Youngblood v. Clepper*, 856 S.W.2d 405 (Tenn.Ct.App.1993); *Waters v. State*, 03A01-9808-BC-00243, 1998 WL 880911 (Tenn.Ct.App.1998) and *Bolton v. State*, E2001-02960-COA-R9-CV; 2002 WL 1798538 (Tenn.Ct. App.2002). In *Cox*, an inmate on work release attacked, raped and sodomized a claimant. One section of this Court's opinion dealt with discretionary function immunity, but the case was decided on the issue of foreseeability. The entire discussion in the case as to discretionary function immunity provided:

> Claimant argues that the acts complained of are not discretionary functions. However, the State maintains that it has never asserted discretionary function immunity as a defense to this claim. The Commissioner found that "all actions complained of herein deal with discretionary duties of State employees for which such employees are immune from liability" and that "pursuant to [T.C.A. §] 9-8-307(d) the State may assert this common law immunity."
> We agree that, under T.C.A. § 9-8-307(d), the State may assert the common law immunity which has developed in this State with regard to discretionary actions of State employees. *See State ex rel. Robertson v. Farmers' State Bank*, 162 Tenn. 499, 39 S.W.2d 281 (1931); *Buckner v. Carlton*, 623 S.W.2d 102 (Tenn.App.1981). In the recent case of *Bowers ex rel. Bowers v. City of Chattanooga*, 826 S.W.2d 427 (Tenn.1992), the Supreme Court adopted the "planning-operational test," under which "decisions that rise to the level of planning or policy-making are considered discretionary acts which do not give rise to tort liability, while decisions that are merely operational are not considered discretionary acts and, therefore, do not give rise to immunity." *Id.* at 430.
> Because we affirm the findings of the Commissioner with regard to the issue of foreseeability, however, we find it unnecessary to determine whether the acts complained of were discretionary. This issue is pretermitted.

*Cox v. State*, 844 S.W.2d 173, 176 (Tenn.Ct.App.1992).

Thus, while the Commissioner applied discretionary function immunity, one must take note of the fact that the State never asserted discretionary function immunity as a defense in that case. In the discussion of Tennessee Code Annotated section 9-8-307(d) the court opines that "the state may assert the common law immunity which has developed in this state with regard to discretionary

-17-

actions of state employees." *Id.* In support of this statement the court relies on two cases, *State ex rel. Robertson v. Farmers State Bank*, 162 Tenn. 499, 39 S.W.2d 281 (1931); *Buckner v. Carlton*, 623 S.W.2d 102 (Tenn.Ct.App.1981). Both of these cases predated the enactment of the Claims Commission Act in 1984. Permission to appeal in *Cox v. State* was denied by the Supreme Court on October 26, 1992.

*Youngblood v. Clepper*, 856 S.W.2d 405 (Tenn.Ct.App.1993) was a suit not before the Claims Commission but before the Circuit Court of Marion County, and not against the State of Tennessee but against a Tennessee Highway patrolman in his individual capacity. The acts in issue occurred on August 12, 1984, which predated the effective date of section 8 of Chapter 972 of the Public Acts of 1984 (the Claims Commission Act), which effective date was January 1, 1985. Section 8 of the Claims Commission Act was codified as Tennessee Code Annotated section 9-8-307.

Thus, this Court in *Youngblood v. Clepper* specifically held that Tennessee Code Annotated section 9-8-307 was not applicable to that case and the decision applied case law predating the Claims Commission Act. *Youngblood*, 856 S.W.2d at 406.

*Waters v. State*, 03A01-9808-BC-00248, 1998 WL 880911 (Tenn.Ct.App. Dec.17,1998) and *Bolton v. State*, E2001-02960-COA-R9-CV, 2002 WL 1798538 (Tenn.Ct.App. Aug.6,2002) are unreported decisions of the Court of Appeals in which applications to appeal to the Supreme Court were not filed.[6] In *Waters*, the claimant appealed an adverse decision of the Claims Commission in a traffic accident on Highway 64 in Polk County resulting in the death of Mr. Waters. The Claims Commission dismissed the action holding that installation of the guardrails was discretionary and the State was therefor immune from suit. The Commission also held that the claimant failed to establish any negligence by the State in its design for maintenance of the highway, or that its actions were the proximate cause of the accident. The Court of Appeals sustained the action of the Claims Commission on the basis that "the Claims Commission properly determined that the State is immune from suit on this evidence under T.C.A. §§ 9-8-307(a)(1)(I) and (J)." *Waters*, 1998 WL 880911, * 3. The appellate court then declined to address the other basis on which the Claims Commission had dismissed the claim. The court predicates its opinion upon its statement:

> T.C.A. § 9-8-307 provides the Commission has exclusive jurisdiction to decide certain monetary claims against the State. In this case, the Claimant brought claims under T.C.A. § 9-8-307(a)(1)(I) and T.C.A. § 9-8-307(a)(1)(J). Under T.C.A. § 9-8-307(d), the State "may assert any and all defenses, including common law defenses, which would have been available to the officer or employee in an action against such an individual based upon the same occurrence." Additionally, T.C.A. § 9-8-307(g) provides "[n]o language contained in this chapter is intended to be construed to abridge the common law immunities of state officials and employees."

_____

[6] Under Tennessee Supreme Court rule 4(H)(1), an unpublished opinion is controlling authority between the parties to the case but for all other purposes is considered persuasive authority.

-18-

Thus, under T.C.A. § 9-8-307(d), "the State may assert the common law immunity which has developed in this State with regard to discretionary actions of State employees." *Cox v. State*, 844 S.W.2d 173,176 (Tenn.App.1992)

*Waters*, 1998 WL 880911, * 1 (Tenn.Ct.App. Dec.19,1998).

The language of Tennessee Code Annotated section 9-8-307(g) is limited to the common law immunities of state officials and employees. No state official or employee was a defendant either in *Waters* or in the case at bar. The common law immunities of state officials and employees does not enure to the benefit of the state except to the extent that section 307(d) allows the state to assert such immunities, and that allowance is limited to absolute immunities.

The difficulty with this reliance on the provision of Tennessee Code Annotated section 9-8-307(d) that the State "may assert any and all defenses, including common law defenses, which would have been available to the officer or employee in an action against such an individual based upon the same occurrence," is that the same statute makes an express distinction between "common law defenses" and "common law immunities." The *Waters'* court then relies on the statement from *Cox v. State*, 844 S.W.2d 173, 176 (Tenn.App.1992) that "the State may assert the common law immunity which has developed in this State with regard to discretionary actions of state employees." The actual provision of Tennessee Code Annotated section 9-8-307(d) as to such common law immunities is "the State may assert any absolute common law immunities available to the officer or employee, however, good faith common law immunity may not be asserted."

In *Bolton v. State*, E2001-02960-COA-R9-CV, 2002 WL 1798538 (Tenn.Ct.App. Aug.6, 2002) the State appealed the action of the Claims Commission denying its Motion for Summary Judgment based on discretionary function immunity. Janet Bolton was injured in September of 1995 in an automobile accident on U.S. Highway11. She sued under Tennessee Code Annotated section 9-8-307(a)(1)(I) and (J), the same provisions of the statute on which the case at bar is predicated. Without elaboration the Claims Commission overruled the summary judgment motion of the State. Certain concessions by the parties must be noted.

> The State, in its reply brief, however, concedes it is not entitled to summary judgment on Plaintiffs' claim that the portion of Highway 11 that includes the intersection was negligently designed or constructed but instead argues Plaintiffs did not raise this claim at the trial level.
>
> Plaintiffs contend the Claims Commission correctly denied the State's Motion for Summary Judgment and argue the State is not entitled to discretionary function immunity for the negligent design and construction and the dangerous condition of the intersection under Tenn.Code Ann. §§ 9-8-307(a)(1)(I) and (J). Plaintiffs, however, concede the State is entitled to judgment as a matter of law under the discretionary function immunity defense for its decision whether or not to install a traffic control device at the intersection.

*Bolton*, 2002 WL 1798538 * 2.

The critical portion of the opinion of the Court of Appeals states:

> Furthermore, under Tenn.Code Ann. § 9-8-307(d), " 'the State may assert the common law immunity which has developed in this State with regard to discretionary actions of State employees.' " *Waters v. State*, No. 03A01-9808-BC-00243, 1998 Tenn.App. LEXIS 844, at * 2-3 (Tenn.Ct.App. Dec.17,1998), *no appl. perm. app. filed*, (quoting *Cox v. State*, 844 S.W.2d 173, 176 (Tenn.Ct.App.1992)).  The State is immune from suit for discretionary acts under this defense.  Courts, when determining whether a particular decision of the State is discretionary, are to apply the planning-operational test.  *Id.* at * 3; *Cox v. State*, 844 S.W.2d at 176.  When using the planning-operational test, courts are to consider " ' (1) the decision-making process and (2) the propriety of judicial review of the resulting decision.' " *Waters v. State*, 1998 Tenn.App. LEXIS 844, at * 3 (quoting *Bowers v. Chattanooga*, 826 S.W.2d 427, 431 (Tenn.1992)).

2002 WL 1798538 * 4.

Reliance is once again placed on the language from *Cox v. State*, 844 S.W.2d 173, 176 (Tenn.Ct.App.1992) that "the state may assert the common law immunity which has developed in this state with regard to discretionary actions of state employees."  Once again this language is not what the statute says.  The only other authority relied on in *Bolton* is the same language from *Waters v. State*.

Footnote 3 in the *Bolton* opinion states:

> This Court in *Waters v. State* held that, while our Supreme Court in *Bowers v. City of Chattanooga* applied the planning-operational test to an action against a municipality under the Tennessee Governmental Tort Liability Act, the test was also applicable to actions against the State where the State raises the defense of common law immunity.  *Waters v. State*, 1998 Tenn.App. LEXIS 844, at * 3.

*Waters*, 2002 WL 1798538, *4 at n. 3.

The difficulty with this position is that while discretionary function immunity upon which *Bowers v. City of Chattanooga* is predicated is specifically applicable to counties and cities under the Tennessee Governmental Tort Liability Act, it is not applicable to the State of Tennessee under the Claims Commission Act, section 9-7-307(d) as only "absolute" immunities are available to the state.  Discretionary function immunity is a qualified (good faith) immunity rather than an absolute

-20-

immunity and by the express provisions of section 307(d) of the statute cannot be relied upon by the State in an action before the Claims Commission.[7]

Even in the absence of a clear legislative mandate such as is contained in Tennessee Code Annotated section 9-8-307(d), the State could not assert discretionary function immunity as a matter of law so as to justify summary judgment.

> Although absolute immunity from § 1983 actions is available to government officials performing legislative functions at the municipal level, generally only qualified or "good faith" immunity has been extended to government officials performing discretionary functions that are characteristically executive or administrative. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Harlow*, supra; *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). See, also, *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed2d 523 (1987); *Section 1983: Sword and Shield*, supra, at 340-42; and *Federal Civil Rights Acts*, supra, §§ 108, 109. Consequently, because the United States Supreme Court has applied a "function" test in determining the extent of immunity granted to government officials, and because that Court has strongly suggested, and other courts have held, that government officials performing at the municipal level should not be classified differently from government officials performing at the federal or state level, we conclude that immunity is available to government officials performing discretionary functions at the municipal level that are executive or administrative in nature, but that that immunity is limited to the qualified or "good faith" variety.

*Point Properties, Inc. v. Anderson*, 584 So.2d 1332, 1338 (Ala.1991).

A case closely analogous to the case at bar is *Savage v. State*, 127 Wash.2d 434, 899 P.2d 1270 (1995). The legislature of Washington had enacted a sweeping abrogation of sovereign immunity similar to the Tennessee Claims Commission Act. In a suit against the State for alleged negligent supervision of a prisoner who raped the plaintiff, the finding of the Supreme Court of Washington denied the effort of the State to assert sovereign immunity:

> In addition, the Court of Appeals' holding on the immunity issue is based on a premise we cannot sustain: that the immunity of a government agent will be extended to the State *unless expressly prohibited* by the Legislature. *Savage*, 72 Wash.App. at 490, 864 P.2d 1009. That conclusion simply cannot be reconciled with

---

[7] The metamorphosis of the position of the State on this issue is interesting and predictable. In *Cox v. State*, "the state maintains that it has never asserted discretionary function immunity as a defense to this claim." 844 S.W.2d 173, 176 (Tenn.Ct.App.1992). When in spite of this assertion the Claims Commission in *Cox* applied discretionary function immunity and the Court of Appeals approved such actions, although in a section of the opinion not necessary to a decision in the case, the State promptly accepted this invitation and in both *Waters* and *Bolton*, specifically relied on discretionary function immunity as it has relied on such immunity in the case at bar.

the legislative abrogation of sovereign immunity. That abrogation would be pointless if the Legislature were required, in order to give it effect, to reiterate it at every occasion in which it might apply. There is no basis for treating RCW 4.92.090 as a nullity, particularly as it is one of the broadest waivers of sovereign immunity in the country. *See* Comment, *Abolition of Sovereign Immunity in Washington*, 36 Wash.L.Rev. 312, 313 (1961).

B

The Extension of Qualified Personal Immunity for the State

The proper starting point for a discussion of whether the State is immune for the qualifiedly immune acts of its officers must begin with the legislative abrogation of sovereign immunity.

Article 2, § 26 of the Washington State Constitution provides: "[t]he legislature shall direct by law, in what manner, and in what courts, suits may be brought against the state." In 1961 the Legislature waived the State's sovereign immunity from civil liability. Laws of 1961, ch. 136, § 1 (codified as RCW 4.92.090). As subsequently amended, that section provides:

> The state of Washington, whether acting in its governmental or proprietary capacity, shall be liable for damages arising out of its tortious conduct to the same extent as if it were a private person or corporation.

This provision operates to make the State presumptively liable in all instances in which the Legislature has *not* indicated otherwise. (underscoring added).

Quite apart from the legislative mandate abrogating sovereign immunity, the different functions personal and governmental immunity are designed to serve support maintaining state liability in this context, even where the agent enjoys qualified personal immunity. One court has explained the difference as follows:

> [T]he fundamental reasons for the two immunities differ; for the officer it is to encourage unrestrained execution of responsibility, while for the sovereign it is to prevent judicial scrutiny of basic policies formulated by coordinate branches of government. To insulate the Government from liability for the inevitable mishaps which will occur when its employees perform their functions without fear of liability not only is unjust, but also serves no purpose for which sovereign immunity need exist.

*Downs v. United States*, 382 F.Supp. 713, 750 (M.D.Tenn.1974) (in a Federal Tort Claims Act case it was unnecessary to decide whether government agents were immune, because the government would not be immune even if they were), *rev'd on other grounds*, 522 F.2d 990 (6th Cir.1975); *see also Lutheran Day Care v. Snohomish Cy.*, 119 Wash.2d 91, 108, 829 P.2d 746 (1992), *cert. denied*, ____ U.S. _____, 113 S.Ct. 1044, 122 L.Ed.2d 353 (1992).

The Restatement (Second) of Torts recognizes this notion:

> With respect to some government functions, the threat of individual liability would have a devasting [sic] effect, while the threat of governmental liability would not significantly impair performance.

Restatement (Second) of Torts § 895D cmt. j, at 420 (1979).

A fact and policy specific inquiry also suggests the rationale underlying the grant of qualified personal immunity to parole officers does not apply with equal force to the State. Parole officers supervising parolees are called upon to make difficult decisions under difficult circumstances. *Taggart v. State*, 118 Wash.2d 195, 215, 822 P.2d 243 (1992). Given these conditions, the prospect of personal liability may reasonably be expected to have an unduly inhibiting effect on the performance of their professional duties.

As was the case in *Babcock v. State*, 116 Wash.2d 596, 616-19, 809 P.2d 143 (1991), the same cannot be said about state liability. On the contrary, maintaining the potential of state liability, as established in RCW 4.92, can be expected to have the salutary effect of providing the State an incentive to ensure that reasonable care is used in fashioning guidelines and procedures for the supervision of parolees.

*Savage v. State*, 127 Wash.2d 434, 444, 899 P.2d 1270, 1275-76 (Wash.1995).

The Claims Commission, both in Commissioner Baker's March 1, 2002 order and in the en banc order of August 5, 2002 exhaustively construed Tennessee Code Annotated section 9-8-307 and the cases deemed applicable to such construction and reached the conclusion that the State was not entitled to rely upon discretionary function immunity. The reasoning of the Commission is impressive but we are content to sustain the position of the Claims Commission on the basis that the statute is clear and unambiguous and needs no construction. Whether one refers to "qualified immunity," "discretionary function immunity," "discretionary acts immunity," or "good faith immunity" is, in the context of this case, academic. None of these characterizations qualify as an "absolute immunity" and only absolute immunities are available to the state under Tennessee Code Annotated section 9-8-307(d).

The State argues that even after it is determined that there is a dangerous condition, "then the State must be able to use its discretion in making a decision whether there are funds and other resources available to correct the dangerous condition." In such situations, the argument goes, the state has the discretion to decide that the correction is too expensive or that monetary considerations require delay in correction until other projects are completed or even that a warning is not feasible. "The State must have the discretion to make these decisions without fear of law suits challenging the decisions made."

This position is inconsistent with Tenn. Code Ann. § 9-8-307(a)(1)(I) and (J). It is also inconsistent with the Claims Commission Act provision that the State's liability in tort "shall be based on the traditional concepts of duty and the reasonably prudent person's standard of care."

Tenn. Code Ann. § 9-8-307(c). Under generally-applicable principles of tort law, all persons have a duty to use reasonable care under the circumstances to refrain from conduct that will foreseeably cause injury to others. *Doe v. Linder Constru. Co., Inc.*, 845 S.W.2d 173, 178 (Tenn. 1992). In determining whether, in a particular situation, there is a duty to act responsibly so as to protect others from unreasonable risks of harm, Tennessee has adopted an approach that balances the foreseeable probability and severity of harm against the burden upon the defendant to engage in alternative conduct that would have prevented the harm. *Staples v. CBL & Associates, Inc.*, 13 S.W.3d 83, 89 (Tenn. 2000); *McClung v. Delta Square Limited Partnership*, 937 S.W.2d 891, 894-95 (Tenn. 1996); *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995). In determining whether a risk is an unreasonable one, the court must consider several factors, including

> The foreseeable probability of the harm or injury occurring; the possible magnitude of the potential harm or injury; the importance or social value of the activity engaged in by defendant; the usefulness of the conduct to defendant; the feasibility of alternative, safer conduct and the relative costs and burdens associated with that conduct; the relative usefulness of the safer conduct; and the relative safety of alternative conduct.

*Staples*, 15 S.W.3d at 89, quoting *Coln v. City of Savannah*, 966 S.W.2d 34, 39 (Tenn. 1998); *McCall v. Wilder*, 913 S.W.2d at 153.

Thus, under general tort law principles, the feasibility and costs associated with correcting a dangerous condition or taking other steps to avoid injury because of that condition would be factors relevant to a determination of duty, not a bar to recovery by an injured plaintiff.[8] Our Supreme Court has applied traditional tort theories to claims under the Claims Commission Act, pursuant to Tenn. Code Ann. §9-8-307(c). *See Stewart v. State*, 33 S.W.3d 785, 793 (Tenn. 2000) (applying common law principles of assumption of a duty where one is not legally imposed to a claim for negligent control).

CONCLUSION

The seed from which the problem developed in this case was planted in *Cox v. State*, when after the State correctly conceded that it could not rely on discretionary function immunity under Tennessee Code Annotated section 9-8-307(d) the Claims Commission applied the doctrine anyway. When this Court in dicta approved the action of the Claims Commission the State changed its position. Thereafter, in *Waters* and in *Bolton* and in the case at bar, the State asserted discretionary function immunity based upon *Cox*. Continued reliance on the dicta in *Cox* simply compounds the problem.

---

[8] The *Savage* court sidestepped this question by affirming the trial court judgment on the basis that the State had tendered no proof as to such considerations or as to the economic resources available to the state.

Subject to monetary caps and limitations to actual damages and court costs, the Claims Commission Act was a sweeping abrogation of sovereign immunity. *Hembree v. State*, 925 S.W.2d 513 (Tenn.1996). It was the same broad waiver of sovereign immunity as was effected in *Savage*, 899 P.2d 1270 (Wash.1995). By way of exception to this broad abrogation, the legislature gave back to the state the right to plead absolute immunity. The legislature specifically prohibited the state from relying on "good faith" immunity. The controlling point is that no matter how one may define "discretionary function" immunity it cannot be defined as an absolute immunity, and since the statute restricts the state to the defense of absolute immunity only, it necessarily follows that the State simply cannot rely on "discretionary function" immunity.

The Claims Commission has already held that the question of notice of dangerous conditions remains for trial. It has further already granted summary judgment to the State under Tennessee Code Annotated section 28-3-202 for all claims predicated upon acts or omission occurring more than four years before the respective dates of claims in these cases. As these issues were not appealed, they are not currently before the Court. Foreseeability remains an issue of fact to be tried.

On the sole issue before this Court which is the availability of "discretionary function" immunity to the State under the Tennessee Claims Commission Act, we affirm the action of the Claims Commission for reasons stated herein and remand these cases for trial on their respective merits "based upon the traditional tort concepts of duty and a reasonably prudent persons' standard of care." Tenn.Code Ann. § 9-8-307(d).

Costs of the cause are assessed to the State of Tennessee.

 

 

 

 

_____
WILLIAM B. CAIN, JUDGE